STATE OF NORTH CAROLINA v. DENNIS JESSIE CHATMAN

No. 429A82

(Filed 5 April 1983)

**1. Constitutional Law § 31— denial of funds for psychiatric examination**

In a prosecution for first degree rape, first degree sexual offense and first degree burglary, defendant was not denied due process and equal protection by the trial court's denial of his pre-trial request pursuant to G.S. 7A-454 for funds for a psychiatric examination to determine his mental condition at the

time of the offenses, even if defendant was also accused of sexual offenses involving five other victims, where defendant had previously undergone an examination for purposes of determining his capacity to proceed to trial and the screening evaluation revealed that defendant's capacity to proceed was not an issue and "further evaluation for capacity to proceed to trial [did] not appear to be needed," and there was nothing in the record which would support a reasonable likelihood that defendant could establish a meritorious defense of insanity at his trial.

**2. Criminal Law §§ 66.6, 66.15— pretrial photographic and lineup identifications—no unnecessary suggestiveness—independent origin of in-court identification**

In a prosecution for rape, sexual offense and burglary, pretrial photographic and lineup identification procedures were not impermissibly suggestive because the victim was told prior to being shown the photographs that the police had a suspect, the victim had only a short time to view her assailant, the victim was unable positively to identify defendant from the photographs but narrowed her choice to two, one of which was defendant, the individual in the second photograph was not present in the lineup, and no other individual in the lineup had the same hairline as the defendant. Moreover, the evidence and findings supported the court's conclusion that the victim's in-court identification of defendant was of independent origin based solely on what she saw at the time of the crimes, and evidence concerning the pretrial and in-court identifications was properly admitted by the trial court.

**3. Criminal Law § 75.11— in-custody statements—waiver of rights—voluntariness**

The trial court's conclusion that defendant's incriminating in-custody statements were admissible in evidence was supported by the court's findings that, prior to questioning, defendant was advised of his rights and signed his name to the waiver of rights form; defendant was fully aware of his rights and was familiar with police procedures; defendant was not pressured, coerced, or in any way threatened or influenced; and defendant at no time indicated that he wished to contact an attorney.

**4. Criminal Law § 173— invited error**

In a prosecution for rape, sexual offense and burglary, testimony elicited by defense counsel on cross-examination of an officer who testified as a State's witness that the witness had told defendant that the police had identified his fingerprints in five rape cases at different locations was invited error about which defendant could not complain on appeal.

**5. Criminal Law § 162.5— unresponsive answer—necessity for motion to strike**

Failure to move to strike the unresponsive part of a witness's answer to a question by opposing counsel, even though the answer is objected to, results in a waiver of the objection. Therefore, defendant waived objection to an unresponsive answer by a State's witness on direct examination which revealed that defendant had committed other distinct, independent offenses of a similar nature to those for which he was charged where defendant objected to the answer but failed to move to strike the unresponsive portion thereof.

State v. Chatman

**6. Criminal Law § 138— burglary case—aggravating factors—use of deadly weapon—offense planned**

The evidence supported the trial court's findings as aggravating factors in a first degree burglary case that defendant was armed with a deadly weapon, a knife, at the time he committed the burglary, and that the offense was planned.

**7. Criminal Law § 138— first degree burglary—aggravating circumstance—defendant as dangerous sex offender**

The trial court properly found as an aggravating circumstance in a first degree burglary case that defendant is a dangerous sex offender since this factor is reasonably related to the overall purposes of sentencing, one of which is to protect the public by restraining offenders, and since defendant's propensity to commit sex offenses was connected to a pattern of breaking into the homes of his victims during the nighttime.

**8. Criminal Law § 138— first degree burglary—aggravating factors—sentence necessary to deter others—lesser sentence would depreciate seriousness of crime**

The trial court erred in finding as aggravating factors in a first degree burglary case that the sentence imposed was necessary to deter others and that a lesser sentence would unduly depreciate the seriousness of the crime since neither factor relates to the character or conduct of the offender.

BEFORE *Albright, J.,* at the 29 March 1982 Criminal Session of Superior Court, FORSYTH County, defendant was convicted of first degree rape, first degree sexual offense, and first degree burglary. He appeals pursuant to G.S. § 7A-27(a) from the imposition of two life sentences. On 11 November 1982 we allowed defendant's motion to bypass the Court of Appeals on the first degree burglary conviction for which he received a prison sentence of fifty years.

Defendant assigns as error the trial court's denial of his pre-trial request for funds to obtain an examination by a private psychiatrist; the admission of testimony concerning (1) pre-trial photographic and line-up identification, (2) statements made during custodial interrogation, and (3) defendant's involvement in other similar offenses. Upon these issues we find no error. Because the trial judge erroneously considered two factors in aggravation in sentencing defendant to the maximum term of 50 years on the burglary conviction, that case must be remanded for re-sentencing.

At trial, the prosecuting witness, Constance Laverne Ross, testified that at approximately five-thirty on the morning of 7 Oc-

tober 1981, she was awakened by an intruder who had apparently entered her home through a window by removing the air conditioning unit. He approached her from the foot of her bed, placed a knife at her throat, and stated "I'm not going to hurt you, I'm just going to rape you." He tied a piece of cloth over her eyes, committed an act of oral sex upon her and then forcibly raped her. Before he left, he informed Ms. Ross that her air conditioner was sitting outdoors on the ground and advised her that she should get up and close the window and leave the air conditioning unit outside until morning. Ms. Ross described her assailant to the police as being about 28 to 30 years old, 5'8" tall, and weighing 170 lbs. He wore a dark buttoned shirt, an old coat, and trousers. She particularly noticed his hairline.

Several months after this incident, law enforcement authorities asked Ms. Ross to view a photographic display, having informed her that they had a suspect. From seven photographs, she selected two, one of which was the defendant. On defendant's motion, a line-up was conducted and Ms. Ross made a positive identification of the defendant.

Officers Branscomb and Charles testified for the State to the effect that on 7 December 1981 at approximately 12:30 a.m., the defendant was arrested at his mother's home. He was taken to the police station. He requested and was permitted to telephone his mother to whom he spoke for fifteen to twenty minutes. At 1:50 a.m. he signed a waiver of rights. According to the officers, most of what defendant said thereafter was vague and repetitive. No written statement was taken and it was not possible to record the conversation. Defendant stated that he was the man they were looking for. He kept repeating "I'd go out and I'd do it." "I went in, I did it, and I left." When questioned as to what he meant, he responded that he would "just go out at nighttime in the early morning hours, break into apartments or houses and rape women." He answered in the affirmative when asked if he remembered breaking into Ms. Ross's home and removing the air conditioning unit. He stated that he needed help. At the time of the interrogation the officers had as many as seven other warrants for the defendant. He was aware of these warrants during questioning.

During voir dire, defendant asserted that when he said he needed help, he meant he needed the help of an attorney; that the

officers promised not to serve the other warrants if he cooperated; that he was questioned for one and one-half hours before being read his rights; and that he felt he had to "go along" with the officers and told his mother so when he telephoned her.

William Weis, a forensic serologist, testified that based on an analysis of blood and saliva specimens taken from the defendant, the donor of these samples could have been the donor of the semen found to be present in specimens taken from the rape kit administered to Ms. Ross.

Fingerprints lifted from Ms. Ross's air conditioning unit matched those of the defendant.

The defendant did not offer any direct evidence on his own behalf.

*Rufus L. Edmisten, Attorney General, by Barry S. McNeill, Assistant Attorney General, for the State.*

*Nancy S. Mundorf, Attorney for defendant-appellant.*

MEYER, Justice.

[1] Defendant first contends that he was denied due process and equal protection due to the trial court's denial of his pre-trial request for funds for a psychiatric examination to determine his mental condition at the time of the offense. His motion was made pursuant to G.S. § 7A-454 and stated that:

1. The defendant has been indicted on charges of Rape, Burglary, and First Degree Sexual Offenses, each of which are punishable by maximum Life Sentence.

2. That there are six separate victims of the alleged offenses at six separate times, that the proof which is expected to be offered by the State of each offense is separate and distinct.

3. That it is necessary for the fair determination of the Defendant's guilt or innocence of each offense to sever the offenses and try each one separately on its own merits.

4. That due to the nature of the charges and the Defendant's mental state as observed by his Attorney, his Attorney respectfully request[s] the court for the approval of a fee for

the Defendant to be examined by a Psychiatrist to determine the question of insanity at the time of the alleged offenses. That said Defendant does not have the resources available to pay a private Psychiatrist to undergo evaluation, and counsel feels that such is necessary to protect any possible defenses at trial.

The trial court, in denying the motion, concluded that "the Defendant [had] not made a showing of necessity for appointment with a Psychiatrist to determine the question of sanity at the time; in that Defendant has had no previous indication of psychiatric disorders."

It appears from the record that defendant had previously undergone an examination for purposes of determining his capacity to proceed to trial. *See* G.S. § 15A-1002. The screening evaluation revealed that defendant's capacity to proceed was not an issue and "further evaluation for capacity to proceed to trial [did] not appear to be needed." Defendant argues that further psychiatric evaluation was necessary to determine his sanity at the time of the offense.

On this issue we find the case of *State v. Easterling,* 300 N.C. 594, 268 S.E. 2d 800 (1980), to be dispositive. In *Easterling* a psychiatrist's report indicated that the defendant was capable of proceeding to trial and that he was legally sane at the time of the alleged crimes. While it is true in the case *sub judice* that there was no determination made of Chatman's sanity at the time of the offense, we do not view this distinction as significant. In *Easterling* this Court relied on the following:

We are not persuaded by defendant's contention that further psychiatric inquiry could have revealed expert information 'as to the possibility of insanity as a defense.' There was simply no evidence presented in the motion or at the hearing which tended to support even a suspicion, much less a reasonable likelihood, that defendant could establish a meritorious defense of insanity. Under these circumstances, the court's refusal to require the State to pay for an additional psychiatric evaluation was not error. *See, e.g., State v. Patterson,* 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated,* 428 U.S. 904 (1976).

*Id.* at 600, 268 S.E. 2d at 804. Likewise, we see nothing in the record before us which would support a reasonable likelihood that defendant could establish a meritorious defense of insanity at his trial. Even if we accept defendant's argument that the request for funds for additional psychiatric evaluation was made because he had been indicted on charges of rape, burglary, and first degree sex offense, and there were six separate incidents involved, we find nothing to differentiate this particular defendant from any other defendant charged with multiple offenses. We can only repeat that "it is practically and financially impossible for the state to give indigents charged with crime every jot of advantage enjoyed by the more financially privileged," and the assistance contemplated by G.S. § 7A-454 will be provided "only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." *State v. Gray,* 292 N.C. 270, 277-78, 233 S.E. 2d 905, 911 (1977). We find no error.

[2]    Defendant next contends that his constitutional right to due process was violated by the trial court's permitting the introduction of evidence obtained from suggestive photographic and line-up procedures. As the basis for this assignment of error, defendant first points to the fact that Ms. Ross was told prior to being shown the photographs that the police had a suspect. He concedes that this alone would not make the procedure unduly suggestive. *See State v. Dunlap,* 298 N.C. 725, 259 S.E. 2d 893 (1979). Added to this was the fact that Ms. Ross had only a few moments to view the intruder, and she was not able to positively identify the defendant from the photographs, narrowing her choice to two, one of which was the defendant. The individual in the second photograph was not present in the line-up and no other individual in the line-up had the same hairline as the defendant.

The law is well-settled that "[i]dentification evidence must be excluded as violating a defendant's rights to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification. *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247 (1968); *State v. White,* 307 N.C. 42, 296 S.E. 2d 267 (1982); *State v. Leggett,* 305 N.C. 213, 287 S.E. 2d 832

(1982); *State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981)." *State v. Hammond,* 307 N.C. 662, 668-69, 300 S.E. 2d 361, 364 (1983).

On the record before us we find sufficient evidence to support the trial court's findings that "[t]he witness based her in-court identification of the defendant upon her having seen him in her bedroom on October 7, 1981; and that identification was not influenced by any photographic identification procedure or by any pretrial identification procedure." Furthermore, defendant did not except to any finding of fact and therefore it is presumed that they are supported by the evidence and thus conclusive on appeal. *State v. Dobbins,* 306 N.C. 342, 293 S.E. 2d 162 (1982). The findings of fact fully support the trial court's conclusion that Ms. Ross's in-court identification of the defendant was of independent origin based solely on what she saw at the time of the crime and "[t]he totality of the circumstances reveal no pretrial identification procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend the fundamental standards of decency, fairness, and justice . . . ." We find no error in the introduction of the identification evidence.

[3] Defendant assigns as error the admission of statements obtained as the result of custodial interrogation. A voir dire hearing was conducted prior to the admission of these statements. The trial judge made detailed findings which included, *inter alia,* the following: prior to questioning, defendant was advised of his rights and signed his name to the rights waiver form; defendant was fully aware of his rights and was familiar with police procedures; defendant was not pressured, coerced, or in any way threatened or influenced; and defendant at no time indicated that he wished to contact an attorney. The findings are fully supported by the evidence, were not excepted to, and support the trial court's conclusion that defendant's statements were "purposely, freely, knowingly, expressly, intelligently, and voluntarily" given. *State v. Easterling,* 300 N.C. 594, 268 S.E. 2d 800; *State v. Herndon,* 292 N.C. 424, 233 S.E. 2d 557 (1977).

Defendant contends that he was denied a fair trial by the admission of testimony suggesting that he had committed other similar offenses. He points to four instances in which reference was made to the fact that he had committed other sex offenses. The first two references occurred during voir dire, out of the

presence of the jury. Therefore, defendant can show no prejudice within the meaning of G.S. § 15A-1443(a).

[4] During defendant's cross-examination of Officer Branscomb in the presence of the jury, the following exchange took place:

> Q. What did you tell him?
>
> A. I told him that we had identified his finger-prints in five rape cases at different locations.

MS. MUNDORF: I object and move to strike to five, Your Honor.

MR. TISDALE: Your Honor, she asked the question . . . .

The objection was overruled.

As we stated in *State v. Waddell,* 289 N.C. 19, 25, 220 S.E. 2d 293, 298 (1975):

> Defendant cannot invalidate a trial by introducing evidence or by eliciting evidence on cross-examination which he might have rightfully excluded if the same evidence had been offered by the State. *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873; *State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429. Neither is in-vited error ground for a new trial. *State v. Payne,* 280 N.C. 170, 185 S.E. 2d 101; *Overton v. Overton,* 260 N.C. 139, 132 S.E. 2d 349.

We find that the error, if any, was invited and one about which the defendant may not complain on appeal.

[5] The final incident took place during Officer Branscomb's testimony concerning his interrogation of the defendant. The witness was asked whether defendant was reluctant to answer questions. The officer responded "Yes. At one point I asked him how many rapes he thought he had committed, and he said he just—" The court sustained defense counsel's objection. There was no motion to strike.

We agree that in this case evidence that defendant commit-ted other distinct, independent offenses of a similar nature to those for which he was charged was properly excludable. *See State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972). While the

question put to Officer Branscomb was proper, his answer including the objectionable material was unresponsive. Under these circumstances the following law applies:

'In case of a specific question, objection should be made as soon as the question is asked and before the witness has time to answer. Sometimes, however, inadmissibility is not indicated by the question, but becomes apparent by some feature of the answer. In such cases the objection should be made as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it.' Stansbury, Evidence, § 27, p. 51, citing *Gibson v. Whitton*, 239 N.C. 11, 79 S.E. 2d 196. McIntosh, 2d Ed., N. C. Practice and Procedure, § 1533, states the rule: 'Where a party has failed to object to evidence at the proper time, he may still ask the court to strike it out.'

*State v. Battle*, 267 N.C. 513, 520, 148 S.E. 2d 599, 604 (1966).

[A]n objection on the ground that the witness's answer is unresponsive to the question is properly available only to the party propounding the question. 'The mere fact that the answer is unresponsive is not an objection available to the opponent.' C. McCormick, *Handbook of the Law of Evidence* § 52 at 113, n. 26 (1954), citing cases. The opponent's appropriate remedy, when it becomes apparent that some feature of the answer is objectionable, is by way of a motion to strike the answer or its objectionable parts. 1 Stansbury's N.C. Evidence, *Witnesses* § 27 (Brandis rev. 1973).

*State v. Beam*, 45 N.C. App. 82, 84, 262 S.E. 2d 350, 351-52 (1980). Failure to move to strike the unresponsive part of an answer, *even though the answer is objected to*, results in a waiver of the objection. *State v. Battle*, 267 N.C. 513, 148 S.E. 2d 599; *State v. Beam*, 45 N.C. App. 82, 262 S.E. 2d 350; *accord State v. Norman*, 19 N.C. App. 299, 198 S.E. 2d 480, *cert. denied*, 284 N.C. 257, 200 S.E. 2d 657 (1973).

Defendant's failure to move to strike the unresponsive portion of the witness's answer therefore waived the objection. Furthermore, given the overwhelming evidence against this defendant, including the in-court identification, defendant's own admissions, fingerprint evidence, and the results of the blood-type

analysis, any error in the admission of this one statement was harmless. G.S. § 15A-1443(a); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981).

Finally defendant contends that the trial court abused its discretion in imposing the maximum sentence of fifty years for first degree burglary, the presumptive sentence for which is fifteen years.

Pursuant to G.S. § 15A-1340.4(a)(1), Judge Albright found the following factors in aggravation:

> 9. The defendant was armed with or used a deadly weapon at the time of the crime.

> 15. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement.

> 16. Additional written findings of factors in aggravation.

>> a. The defendant has served a prior prison sentence.

>> b. The offense was planned.

>> c. The defendant is a dangerous sex offender whose history makes it necessary to segregate him for an extended term from the public for its safety and protection.

>> d. The sentence pronounced by the court is necessary to deter others from committing the same crime.

>> e. A lesser sentence than that pronounced by the court will unduly depreciate the seriousness of the defendant's crime.

In mitigation, Judge Albright found only one factor: Prior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrong-doing in connection with the offense to a law enforcement officer.

[6] Defendant first contends that because the knife was used in the rape, but was not actually used in the burglary, finding No. 9 was erroneous. We are not persuaded. Defendant was armed with a deadly weapon, the knife, *at the time he committed the*

*burglary offense.* Judge Albright properly found as a factor in aggravation that defendant was armed at the time of the crime.

Defendant also contends that the evidence was insufficient to support finding No. 16(b) that the offense was planned. There was evidence that the defendant would drive around in his car at night and break into homes for the purpose of raping women. We reject defendant's position that in order to find that the offense was planned it was necessary to show that defendant "methodically surveyed . . . houses or carefully chose a particular night before entering." The argument is specious. We find plenary evidence to support finding No. 16(b).

**[7]**   With respect to the finding that "defendant is a dangerous sex offender," we find that this factor is reasonably related to the overall purposes of sentencing, one of which is to protect the public by restraining offenders. *See* G.S. § 15A-1340.4(a) and -1340.3. A defendant's dangerousness to others may be legitimately considered as an aggravating factor. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). Furthermore, this defendant's propensity to commit sex offenses was inextricably connected to a pattern of breaking into the homes of his victims during the nighttime, thereby injecting into each sex offense an added element of dangerousness. On this aggravating factor we find no error.

**[8]**   Judge Albright erred in finding as factors in aggravation that the sentence was necessary to deter others, and that a lesser sentence would unduly depreciate the seriousness of the crime. These two factors fall within the exclusive realm of the legislature and were presumably considered in determining the presumptive sentence for this offense. While both factors serve as legitimate purposes for imposing an active sentence, neither may form the basis for increasing or decreasing a presumptive term because neither relates to *the character or conduct of the offender. See State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

Because "it must be assumed that every factor in aggravation measured against every factor in mitigation, with concomitant weight attached to each, contributes to the *severity* of the sentence—the quantitative variation from the norm of the presumptive term," we held in *Ahearn* that "in every case in which it is found that the judge erred in a finding or findings in

aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing." *Id.* at 602, 300 S.E. 2d at 701. Therefore defendant is entitled to a new sentencing hearing on his burglary conviction for error found in two aggravating factors.

Case number 81CRS48691 — Count I (first degree burglary) is remanded to the Superior Court, Forsyth County, for re-sentencing.

Case number 81CRS48691 — Count II (first degree rape) — no error.

Case number 81CRS49222 — (first degree sex offense) — no error.