DILLON, Judge.
 

 *511
 
 This present appeal is the second to our Court in this matter. In the first appeal, we found no error in the judgment convicting Defendant Timothy Ray Casey ("Defendant") of various sexual crimes. In this present appeal, Defendant seeks review of the trial court's order denying his Motion for Appropriate Relief ("MAR") seeking a new trial for ineffective assistance of his trial counsel and of his appellate counsel. For the reasons explained herein, we reverse the trial court's order and remand with instructions to enter an order granting Defendant's MAR.
 

 I. Background
 

 Defendant was indicted on one count of statutory sexual offense and two counts of taking indecent liberties, stemming from alleged encounters with the minor daughter ("Kim")
 
 [1]
 
 of his then live-in girlfriend.
 

 The evidence at trial tended to show as follows: In 1996, when Kim was five years of age, Defendant moved in with Kim and her mother. Nine years later, on 1 January 2006, when Kim was fourteen years of age, Defendant
 
 *909
 
 broke up with Kim's mother and moved out. Two days later, on 3 January 2006, Kim told her mother, who was upset about the breakup, that Defendant had molested her during the nine-year period he had lived with them.
 

 The State offered no physical evidence of the alleged sexual abuse or that Kim had told anyone of the abuse prior to telling her mother.
 

 The State did call other witnesses, including a clinical psychologist, qualified as an expert. This expert opined on direct examination that Kim exhibited signs consistent with being sexually abused. During cross-examination, however, the expert went further and made statements
 
 *512
 
 that Kim had, in fact, been sexually abused. Defendant's trial counsel made no motion to strike these statements.
 

 The jury found Defendant guilty of all charges. Defendant appealed to this Court. During the first appeal to our Court, Defendant argued, in part, that the expert's testimony
 
 offered on direct
 
 - that Kim exhibited signs consistent with sexual abuse - amounted to impermissible vouching. Defendant's appellate counsel made no argument concerning the expert's statements made during cross-examination that Kim had been sexually abused. We found no error, never addressing any issues concerning the expert's statements made during cross-examination.
 
 [2]
 

 Defendant subsequently filed a MAR with the trial court, alleging ineffective assistance by both his trial counsel and his appellate counsel. The trial court issued an order denying Defendant's MAR.
 

 Defendant petitioned this Court for a writ of
 
 certiorari
 
 to review the order. We granted Defendant's petition and now review the merits of his arguments.
 

 II. Standard of Review
 

 We review the trial court's Order denying Defendant's MAR for "whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court."
 
 State v. Stevens
 
 ,
 
 305 N.C. 712
 
 , 720,
 
 291 S.E.2d 585
 
 , 591 (1982). Based on the following, we reverse and remand for a new trial.
 

 III. Analysis
 

 Defendant argues that the trial court should have granted his MAR based on the ineffective assistance of counsel he received at the trial level and at the appellate level. For the following reasons, we conclude that (1) the testimony offered by the State's expert that Kim had, in fact, been sexually abused was inadmissible; (2) Defendant has waived any argument concerning whether he was denied effective assistance of
 
 trial
 
 counsel; and (3) Defendant was denied effective assistance of
 
 appellate
 
 counsel in his first appeal when counsel failed to make any argument in the first appeal concerning the expert's testimony that Kim had, in fact, been sexually abused. Accordingly, Defendant is entitled to a new trial.
 

 *513
 
 A. Testimony by the State's Expert at Trial
 

 Regarding expert opinions offered in sexual offense prosecutions involving a child victim, our Supreme Court has instructed as follows: An expert may offer an opinion as to whether a child presents symptoms or characteristics
 
 consistent with
 
 those exhibited by children who have, in fact, been sexually abused.
 
 See
 

 State v. Kennedy
 
 ,
 
 320 N.C. 20
 
 , 32,
 
 357 S.E.2d 359
 
 , 366 (1987). However, where there is no physical evidence of sexual abuse, an expert may not offer an opinion "that sexual abuse has
 
 in fact
 
 occurred" in that case.
 
 State v. Stancil
 
 ,
 
 355 N.C. 266
 
 , 266-67,
 
 559 S.E.2d 788
 
 , 789 (2002) (reasoning that "absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility"). And an expert's opinion which bolsters the child's credibility
 
 may
 
 constitute plain error.
 
 State v. Towe
 
 ,
 
 366 N.C. 56
 
 , 62-63,
 
 732 S.E.2d 564
 
 , 568 (2012).
 

 *910
 
 During the trial in this matter, the State offered no physical evidence that Kim had been sexually abused.
 

 The State did tender an expert who opined on direct that Kim exhibited characteristics consistent with that of a sexual abuse victim, as generally allowed under our case law, though the basis of his opinion does not seem particularly compelling. That is, he did not base his opinion on the presence of emotional or psychological trauma that he observed in Kim that may also be found in a sexual abuse victim, as he testified that Kim did not exhibit any such signs. Rather, he based his opinion essentially on his belief that Kim was credible, listing two factors: (1) Kim's ability to describe various sexual acts at such a young age and (2) Kim had no reason to lie. We note, though, that Kim was actually fourteen (14) years old when she first reported the abuse and further that Defendant had ended his decade-long relationship with Kim's mother just two days before Kim first reported the abuse:
 

 Q: Doctor, do you have an opinion satisfactory to yourself as to whether or not [Kim] exhibited characteristics of someone who had been sexually abused? ... Could you tell us what that is and your basis for that?
 

 A: My opinion is that she does display characteristics consistent with a child, young adult, adolescent adult who has been sexually abused. The characteristics that would be germane in this case are first that she describes in a plausible way sexual acts. That she describes those acts in a way that are consistent with other sources of information. That she has a - had an
 
 *514
 
 age-inappropriate sexual knowledge. [Second] [t]hat she did not have what would appear to be obvious alternative reasons for making a disclosure. ... That she did not have obvious reasons for making a false disclosure .... That would be the extent of my basis.
 

 Q: Thank you, Doctor. No further questions.
 

 In any event, as noted in the trial court's MAR order, Defendant's counsel during the jury trial did properly object to the opinion offered by the State's expert
 
 on direct
 
 . And Defendant's appellate counsel challenged this opinion in the first appeal. However, as we stated in the first appeal, the State's witness
 
 on direct
 
 never expressly opined that Kim had, in fact, been sexually abused, just that the manner in which she was able to describe the abuse was consistent with someone who had been sexually abused, an opinion which is generally allowed even where there is no physical evidence of sexual abuse.
 

 Defendant argues in this current appeal that
 
 on cross-examination
 
 , the State's expert went further by opining that though Kim did not exhibit any characteristics of psychiatric trauma, she had, in fact, been sexually abused:
 

 Q: Well now according to your report, wasn't there - You said that you - you comment on her performance on the Rorschach test and you say there was no indication of any acute psychiatric disturbance.
 

 A: I apologize. I did misspeak. I did conduct evaluation involving the Rorschach, the TAT, and I had [Kim]'s father complete the CAB regarding her.
 

 Q: As a matter of fact, you found nothing unusual about this young lady, did you?
 

 A: Nothing unusual
 
 other than my opinion that she had been sexually abused.
 

 Q: And that's your opinion. But now when you are talking about characteristics of sexually abused children that's when you're talking about such things as post-traumatic stress syndrome, are you not?
 

 A: Possibly. Possibly.
 

 (Emphasis added).
 

 *515
 
 And Defendant argues that the State's expert
 
 on re-direct
 
 again opined that Kim's sexual abuse was a fact. Defendant points to testimony where the State's expert conceded that Kim did not exhibit anxiety, depression, or personality disorders which would be consistent with a sexual abuse victim, but that he still had his "psychiatric concerns" because of "the fact that [Kim] was abused":
 

 *911
 
 Q: What does psychiatric concern, what are you talking about?
 

 A: Well, you know, we've got a big read [sic] book that has all of our psychiatric diagnoses in it which include anxiety and depression and personality disorders and all of those things, and we - she does not fit the diagnostic criteria for any of those disorders. The closest she comes is what's called a V-Code diagnosis, which is not a diagnosis. It's sexual abuse of a child. And so it doesn't have to do in essence with her, that's why it's not a diagnosis of her.
 
 It has to do with the fact that she was abused.
 

 (Emphasis added.) The State's expert explained immediately
 
 on re-cross
 
 what he meant by this statement, specifically that his statement was based on his superior ability as a trained professional to determine whether Kim was being truthful:
 

 Q: And [your statement made on re-direct is] based on her comments to you and nothing else?
 

 A: It's based on her statements to me being consistent with information provided by other individuals, being consistent over time, being detailed, being plausible, so I would say it's nothing else. It is her statements to me, but you know, that's what my education is about is being able to make inferences based on individual statements to me.
 

 In its MAR order, the trial court found that the State's expert was not vouching for Kim's credibility when he stated that he found nothing unusual in Kim "other than [his] opinion that she had been sexually abused." Specifically, the trial court found:
 

 While it is clear that [the expert] could have said "except that in my opinion her symptoms are consistent with a child who suffered from sexual abuse", it is also equally clear and the court so finds that [the expert] was not
 
 *516
 
 issuing a diagnosis or vouching for [Kim's] credibility but redirecting Defendant's counsel to the overarching concern of the examination and disagreeing with counsel's underlying assertion that nothing was wrong with [Kim].
 

 We conclude that this finding does not go far enough to support the trial court's order denying Defendant's MAR and is otherwise not supported by the evidence. The issue is not what the trial judge may have thought the expert intended by his testimony; the issue is whether the testimony, as stated, could be reasonably construed by at least one juror to be an opinion regarding Kim's credibility. And the finding is not otherwise supported by the evidence. It is not "clear" that the jury would not have construed the expert's statement as witness vouching. A plain reading of the expert's testimony is that even though Kim showed no signs of psychiatric or psychological disorder consistent with sexual abuse victims, it was the expert's opinion that Kim had been sexually abused
 
 because
 
 of his evaluation of her credibility. Perhaps, as the trial court states, the expert
 
 meant
 
 merely to repeat his opinion made on direct, but that is not what was heard by the jury.
 

 Also, in its MAR order, the trial court found that the State's expert was not opining about Kim's credibility when he stated on re-direct that "[i]t has to do with the fact that she was sexually abused" but was merely explaining the coding in his records showing why Kim had been referred to him. Specifically, the trial court found as follows:
 

 Here again the Court finds that while the [expert]'s words are inartful, when understood in context, he states that [Kim] is not diagnosed with being sexually abused and that does not in essence have to do with her. He then in an effort to explain why [she] was being seen states in a shorthand. "It has to do with the fact [that] she was abused." While there is no doubt the [expert] could have removed all ambiguity by saying, [Kim] was referred to me to investigate her claims of improper sexual contact and while I did not make a diagnosis under the Diagnostic and Statistical Manual, we did code her visit showing that she was seen for investigation of sexual abuse. There is also no doubt that the [expert] was not rendering a formal opinion that [Kim] was sexually abused, or vouching for her credibility, but explaining both that [Kim] did not have a formal diagnosis and the charting number assigned to the [her]
 

 *912
 
 visit using the Diagnostic and Statistical Manual or big red book was sexual abuse.
 

 *517
 
 We conclude that this finding is internally inconsistent and not supported by the evidence. The finding is internally inconsistent in that the finding states that the statement was "inartful" and ambiguous but also states that there was "no doubt" what the expert meant. Further, the finding contradicts the evidence: the expert explained that his statement regarding the "fact that she was abused" was not a mere coding issue but was based on Kim's statements "being consistent over time," "being plausible," and his ability to "make inferences based on [Kim's] statements." In other words, the evidence shows that there was tremendous doubt as to what the expert meant.
 

 We have reviewed the testimony of the State's expert and conclude that in the absence of physical evidence of sexual abuse, this testimony was not admissible under our Rules of Evidence. His statements are similar to those determined to amount to plain error by our Supreme Court in
 
 State v. Towe
 
 , where the expert testified that the minor was in a category of children who have been sexually abused but who showed "no abnormal findings" or "physical findings of abuse."
 
 Towe
 
 ,
 
 366 N.C. at 59-60
 
 ,
 
 732 S.E.2d at 566
 
 . It is, indeed, reasonably probable that at least one juror construed the statements made by the State's expert, no matter his intent, as vouching for Kim's credibility.
 

 We are not saying that Kim was not being truthful in her testimony. She very well may have experienced years of horrible abuse at the hands of Defendant. Or she may have been making untruthful comments about Defendant, either to get back at Defendant for leaving her mother or to cause her mother to be more focused on their mother-daughter relationship rather than her mother's relationship with Defendant. Or the truth may lie somewhere in between. But Kim's credibility was for the jury to assess in a fair trial, without the influence of an opinion by a doctor who had examined Kim that Kim was being truthful despite the absence of physical evidence of abuse.
 

 B. Ineffective Assistance Of Counsel
 

 It is axiomatic that a defendant's right to counsel includes the right to the effective assistance of counsel.
 
 McMann v. Richardson
 
 ,
 
 397 U.S. 759
 
 , 771,
 
 90 S.Ct. 1441
 
 ,
 
 25 L.Ed.2d 763
 
 (1970) ;
 
 State v. Braswell
 
 ,
 
 312 N.C. 553
 
 , 561,
 
 324 S.E.2d 241
 
 , 247-48 (1985). When a defendant attacks his conviction on the basis that his counsel was ineffective, he must show two things: (1) his "counsel's performance ... fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced [him]."
 
 Strickland
 

 v. Washington
 
 ,
 
 466 U.S. 668
 
 , 687-88,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). We must be highly deferential to counsel's strategy and performance as "there is a presumption
 
 *518
 
 that ... counsel acted in the exercise of reasonable professional judgment."
 
 State v. Gainey
 
 ,
 
 355 N.C. 73
 
 , 112-13,
 
 558 S.E.2d 463
 
 , 488 (2002).
 

 At the MAR hearing, Defendant argued that he received ineffective assistance of counsel ("IAC") by both his trial counsel and by his appellate counsel in failing to address the impermissible opinion testimony by the State's expert witness. We address the issue with respect to his trial counsel and his appellate counsel in turn.
 

 1. IAC by Trial Counsel
 

 Defendant argues that his trial counsel's assistance was ineffective by failing to move to strike the opinion of the State's expert that Kim had, in fact, been sexually abused. We note that Defendant's appellate counsel did make an IAC argument in the first appeal but that it was not based on the trial counsel's failure to object to the State's expert opinion that Kim had, in fact, been sexually abused. Therefore, for the reasons stated below, we hold that any IAC challenge based on the Defendant's trial counsel is waived.
 

 Our Supreme Court has instructed that a defendant's trial counsel should object to a witness' answer "as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it."
 
 State v. Chatman
 
 ,
 
 308 N.C. 169
 
 , 178,
 
 301 S.E.2d 71
 
 , 76 (1983). Failure to object results in a waiver of the
 
 *913
 
 error.
 

 Id.
 

 Such error at trial is one readily available to argue on appeal.
 

 Thus, our General Statutes provide that a motion for appropriate relief may be denied where "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. Gen. Stat. § 15A-1419(a)(3) (2009). Our Supreme Court has affirmed this rule.
 
 See
 

 State v. Hyman
 
 ,
 
 371 N.C. 363
 
 , 382-83,
 
 817 S.E.2d 157
 
 , 169-70 (2018).
 

 In
 
 Hyman
 
 , our Supreme Court held that a defendant waives the right to assert IAC by his trial counsel after a first appeal where he could have raised it in that appeal.
 

 Id.
 

 But our Supreme Court recognized that such right is only waived if the IAC issue could have been resolved
 
 by the appellate court
 
 in the first appeal, based on the cold record, without having to remand the matter to the trial court for consideration:
 

 As an initial matter, we must address the validity of the State's contention that the claim asserted in defendant's [MAR] is procedurally barred pursuant to N.C.G.S. § 15A-1419(a)(3) ... [.] As we have previously indicated, N.C.G.S. § 15A-1419(a)(3) is not a general rule that any
 
 *519
 
 claim not brought on direct appeal is forfeited on state collateral review and requires the reviewing court, instead, to determine whether the particular claim at issue could have been brought on direct review.
 

 [IAC] claims brought on direct review will be decided on the merits [only] when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as ... an evidentiary hearing.
 

 ...
 

 As a result, in order to be subject to the procedural default specified in N.C.G.S. § 15A-1419(a)(3), the direct appeal record must have contained sufficient information to permit the reviewing court to make all factual and legal determinations necessary to allow a proper resolution of the claim in question.
 

 Id.
 

 (emphasis added) (internal marks and citations omitted).
 

 Here, we conclude that the cold record from the first appeal was sufficient for our Court to determine in that first appeal that Defendant's trial counsel provided ineffective assistance of counsel. Defendant's trial counsel failed to object to the opinion offered by the State's expert that Kim had, in fact, been sexually abused. This testimony was clearly inadmissible. Defendant's trial counsel did have a duty to object to the testimony.
 
 Chatman
 
 ,
 
 308 N.C. at 178
 
 ,
 
 301 S.E.2d at 76
 
 (1983) (holding that counsel should object to a witness' answer "as soon as the inadmissibility becomes known, and should be in the form of a motion to strike out the answer or the objectionable part of it."). Failure to object results in a waiver of the error.
 

 Id.
 

 We cannot fathom any trial strategy or tactic which would involve allowing such opinion testimony to remain unchallenged. Moreover, the trial transcript reveals that allowing the testimony to remain unchallenged was not part of any trial strategy. Indeed, a sidebar discussion between the trial judge and both attorneys indicates that it was not the intention or tactic of Defendant's counsel to introduce this into evidence.
 

 Further, relying on precedent from our Supreme Court, we conclude that trial counsel's failure to object to the expert opinion was prejudicial. Again, the burden on Defendant was to show that there was a "reasonable probability that, but for counsel's [error], the result of the proceeding would have been different."
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 . Though this
 
 *520
 
 burden is not a low one, the United States Supreme Court instructs that this standard is not so high as to require that a defendant "show that counsel's deficient conduct more likely than not altered the outcome[.]"
 

 Id.
 

 at 693
 
 ,
 
 104 S.Ct. 2052
 
 .
 
 [3]
 
 Based on holdings from our Supreme
 
 *914
 
 Court finding similar testimony to amount to "plain error," we conclude that the cold record reveals that it is "reasonably probable" in a
 
 Strickland
 
 sense, that the failure of Defendant's counsel to object to the opinion testimony by the State's expert impacted the outcome of the trial.
 

 Therefore, because we conclude that the cold record was sufficient for our Court to rule on an IAC claim in Defendant's first appeal, we hold that Defendant's MAR following that first appeal as it related to his trial counsel's performance is barred.
 

 2. IAC by Appellate Counsel
 

 Defendant also argues that his appellate counsel's assistance was ineffective in failing to argue the correct portion of the State expert's opinion and by failing to cite to Defendant's trial counsel's performance. Defendant's IAC claim pertaining to his
 
 appellate
 
 counsel's performance is not procedurally barred. The trial court denied Defendant's MAR with respect to his appellate counsel's performance. For the reasons stated below, we hold that the trial court erred in denying Defendant's MAR in this regard.
 

 Our Supreme Court has held that the two-pronged test for determining whether a defendant has received ineffective assistance of counsel, set out in
 
 Strickland
 
 , also applies to appellate counsel. See
 
 State v. Todd
 
 ,
 
 369 N.C. 707
 
 , 710-12,
 
 799 S.E.2d 834
 
 , 837-38 (2017) (in order to prove that appellate counsel was ineffective, a defendant must show that his counsel's performance was deficient and that the deficiency was prejudicial).
 

 In
 
 Smith v. Murray
 
 , the United States Supreme Court stated that "the decision not to press [a] claim on appeal [is not] an error of such magnitude that it render[s] counsel's performance constitutionally deficient under the test of
 
 Strickland
 
 [.]"
 

 *521
 

 Smith v. Murray
 
 ,
 
 477 U.S. 527
 
 , 535,
 
 106 S.Ct. 2661
 
 ,
 
 91 L.Ed.2d 434
 
 (1986) ;
 
 see
 

 State v. Collington
 
 , --- N.C. App. ----, ----,
 
 814 S.E.2d 874
 
 , 885 (2018). Indeed, not bringing a claim on appeal may be sound strategy as "winnowing out weaker arguments on appeal and focusing on" stronger arguments is the hallmark of appellate advocacy.
 
 Jones v. Barnes
 
 ,
 
 463 U.S. 745
 
 , 751-52,
 
 103 S.Ct. 3308
 
 ,
 
 77 L.Ed.2d 987
 
 (1983). However, failing to raise a claim on appeal that was plainly stronger than those presented to the appellate court
 
 is
 
 deficient performance.
 
 Davila v. Davis
 
 , --- U.S. ----,
 
 137 S.Ct. 2058
 
 , 2067,
 
 198 L.Ed.2d 603
 
 (2017).
 

 In the first appeal, Defendant's appellate counsel argued that the State's expert witness improperly vouched for the victim by testifying on direct that: "My opinion is that [the victim] does display characteristics consistent with a child, young adult, adolescent adult who has been sexually abused." However, appellate counsel's argument was clearly weak in light of the cases cited in its brief.
 
 See
 

 State v. Stancil
 
 ,
 
 355 N.C. 266
 
 , 267,
 
 559 S.E.2d 788
 
 , 789 (2002) ("[A]n expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.");
 
 see also
 

 State v. Hall
 
 ,
 
 330 N.C. 808
 
 , 817-18,
 
 412 S.E.2d 883
 
 , 887-88 (1992). Moreover, appellate counsel failed to make any argument concerning the portion of the State expert's testimony before us now, erroneously stating in Defendant's appellate brief that "neither witness directly opined that Kim was 'credible.' "
 

 The State argues that Defendant's appellate counsel could not have made an argument in the first appeal about the opinion offered by the State's expert during cross-examination since any error would be "invited error." Indeed, our General Statutes prevent a defendant from complaining of error on appeal where the error was invited by the defendant. N.C. Gen. Stat. § 15A-1443(c) (2005). However, our Supreme Court instructs that where a witness, on cross-examination, answers outside of the scope of the question or fails to respond to the question, the testimony is not said to be "invited."
 

 *915
 

 State v. Wilkerson
 
 ,
 
 363 N.C. 382
 
 , 412,
 
 683 S.E.2d 174
 
 , 192-93 (2009) (finding an expert witness's answers during cross-examination were not invited where the defense counsel asked two narrow questions and the witness's response was neither within the scope of the question nor given in response to the question). We conclude that the opinion offered by the State's expert was outside the scope of the question posed by Defendant's trial counsel. Specifically, the expert was asked two narrow questions: "you found nothing unusual about this young lady, did you?" and "[your opinion offered on direct that she exhibited characteristics of one who has been sexually abused is] based on her comments to you and nothing else?" Both questions are leading
 
 *522
 
 questions which the witness could answer with "yes" or "no," but instead he added to this answer by giving additional details on his reasons for his opinion. The expert's statements that Kim actually was abused were outside the scope of these questions.
 
 See
 
 Id.
 

 Since Defendant did not ask the State's expert his opinion as to whether Kim was, in fact, sexually abused, the opinion did not constitute invited error. But even if it was invited error, Defendant's appellate counsel should have raised this matter as part of the IAC argument made during the first appeal.
 

 We conclude that the error by Defendant's appellate counsel in the first appeal was prejudicial. There is a reasonable probability, in the
 
 Strickland
 
 sense which does
 
 not
 
 require a "more likely than not" probability, that the outcome of the first appeal would have been different had appellate counsel made arguments concerning the expert's opinion that Kim had, in fact, been abused, rather than erroneously conceding that the expert never overtly offered such opinion and focusing only on the opinion offered on direct. Indeed, the thrust of the argument in the first appeal was that the expert's opinion that Kim exhibited characteristics of a sexual abuse victim - a type of opinion which our Supreme Court has repeatedly held is appropriate - amounted to witness vouching. Thus, both prongs of
 
 Strickland
 
 are met.
 

 IV. Conclusion
 

 The testimony by the State's expert following his testimony on direct did amount to vouching for Kim's credibility.
 

 Defendant's MAR as it pertains to the deficient performance of his
 
 trial
 
 counsel, however, is procedurally barred since this IAC claim could have been raised in the first appeal.
 

 Defendant's MAR as it pertains to the deficient performance of his
 
 appellate
 
 counsel by failing to make any argument about the expert's inadmissible vouching of Kim's testimony is not procedurally barred. We conclude that Defendant was prejudiced by the failure of his appellate counsel in the first appeal to make an argument concerning the witness vouching by the State's expert. The only direct evidence of sexual abuse was the testimony of the alleged victim, Kim. Kim may well be telling the truth. But, in the absence of physical evidence of abuse, Defendant is entitled to have Kim's credibility assessed by a jury free from the taint of an opinion by a medical expert that Kim's testimony is truthful. Therefore, Defendant's MAR seeking a new trial should have been granted. We, therefore, reverse the order denying Defendant's MAR and remand for entry of an order granting Defendant's MAR and for other proceedings consistent with this opinion.
 

 *523
 
 REVERSED.
 

 Judge STROUD concurs.
 

 Judge BERGER dissents in separate opinion.
 

 BERGER, Judge, concurring in part, dissenting in part.
 

 I concur with the majority that appellate counsel was ineffective. I concur in result only with the majority's conclusion that Defendant's motion for appropriate relief regarding trial counsel is procedurally barred. However, because Defendant was not prejudiced by the testimony of Dr. Sheaffer, I respectfully dissent from the remainder of the majority opinion.
 

 "When considering rulings on motions for appropriate relief, we review the trial court's
 
 *916
 
 order to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court."
 
 State v. Frogge
 
 ,
 
 359 N.C. 228
 
 , 240,
 
 607 S.E.2d 627
 
 , 634 (2005) (citation and quotation marks omitted). "When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by competent evidence and may be disturbed only upon a showing of manifest abuse of discretion. However, the trial court's conclusions are fully reviewable on appeal."
 
 State v. Lutz
 
 ,
 
 177 N.C. App. 140
 
 , 142,
 
 628 S.E.2d 34
 
 , 35 (2006) (citation and quotation marks omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Campbell
 
 ,
 
 359 N.C. 644
 
 , 673,
 
 617 S.E.2d 1
 
 , 19 (2005) (citation and quotation marks omitted).
 

 Here, the trial court's findings of fact were supported by competent evidence, and there has been no showing by Defendant, nor finding by the majority, that there was a manifest abuse of discretion related to the trial court's findings. Specifically, the trial court made the following relevant findings of fact:
 

 12. Defendant's trial counsel did not object to the two instances set out above and contended to be plain error. Dr. Sheaffer's testimony ... is clear to the Court and found as a fact not to be the rendering of expert opinion or vouching for the child's credibility, but rather disagreeing with counsel's assertion that nothing unusual was noted
 
 *524
 
 about the child by Dr. Sheaffer and how the child's visit was coded by Dr. Sheaffer's office.
 

 13. Dr. Sheaffer's testimony ... on cross examination was an answer to Defendant's counsel's assertion that the Doctor had found nothing unusual with the child in the interview and testing. This cross testimony immediately followed the Doctor's testimony of the child's disclosure of sexual abuse to the Doctor as well as the Doctor's testimony that the child's symptoms were consistent with a child who had been sexually abused. The Defendant, by establishing that the child did not display mental or emotional problems sometimes associated with sexual abuse, was attempting to undermine the child's testimony of sexual abuse and Dr. Sheaffer's testimony that the child's symptoms were consistent with sexual abuse. Defendant's counsel asked, "you found nothing unusual about this young lady did you?" The Court finds both from watching the exchange and the record, the Doctor was attempting to answer Counsel's pointed question rather than vouch for the child's testimony. While it is clear that Dr. Sheaffer could have said "except that in my opinion her symptoms are consistent with a child who suffered from sexual abuse", it is also equally clear and the court so finds that Dr. Sheaffer was not issuing a diagnosis or vouching for the child's credibility but redirecting Defendant's counsel to the overarching concern of the examination and disagreeing with counsel's underlying assertion that nothing was wrong with the child. The record reveals as much as trial counsel did not object as she had when Dr. Sheaffer offered his expert opinion on direct. But again focused the questioning of the Doctor on the lack of the type of trauma sometimes displayed by children suffering sexual abuse, by asking "And that's your opinion but when you are talking about characteristics of sexually abused children that's when you're really talking about such things as post-traumatic stress syndrome, are you not?"
 

 18.... Dr. Sheaffer explains why he found no reason for concern of the child's mental and emotional health during the interview and examination of the child. Dr. Sheaffer clarifies that he was referring to the lack of reason for psychiatric concern over the child to Defendant's counsel. He
 
 *525
 
 is then asked by the State to explain psychiatric concern. Dr. Sheaffer explains under the "big red book" the child does not meet any diagnosis. Dr. Sheaffer explains that a V-Code diagnosis is not a diagnosis. "It is sexual abuse of a child. And so it doesn't have to do in essence with her, that's why it's not a diagnosis of her. It has to do with the fact she was abused."
 
 *917
 
 19. Here again the Court finds that while the Doctor's words are inartful, when understood in context, he states that the child is not diagnosed with being sexually abused and that does not in essence have to do with her. He then in an effort to explain why the child was being seen states in a shorthand. "It has to do with the fact she was abused." While there is no doubt the Doctor could have removed all ambiguity by saying, the child was referred to me to investigate her claims of improper sexual contact and while I did not make a diagnosis under the Diagnostic and Statistical Manual [ ("DSM") ], we did code her visit showing that she was seen for investigation of sexual abuse. There is also no doubt that the Doctor was not rendering a formal opinion that the child was sexually abused, or vouching for her credibility, but explaining both that the child did not have a formal diagnosis and the charting number assigned to the child's visit using the Diagnostic and Statistical Manual or big red book was sexual abuse.
 

 ...
 

 25. The Court finds upon review of the record as to the evidence presented of the Defendant's guilt and the circumstances as revealed by the record under which Dr. Sheaffer's testimony, alleged to be plain error was presented to the jury that it is found by this Court that Dr. Sheaffer was not rendering his expert opinion that the child was abused or vouching for the child's credibility, but rather disagreeing with counsel's assertion that nothing unusual was noted about the child by Dr. Sheaffer and explaining inartfully how the child's visit was coded by Dr. Sheaffer's office.
 

 26. This Court finds that the testimony of Dr. Sheaffer ... did not have a probable impact on the jury's verdict. The
 
 *526
 
 testimony is therefore not prejudicial to Defendant in light of all the evidence at trial.
 

 Based upon review of the transcript, the trial court's findings of fact are supported by competent evidence. Further, Defendant has failed to demonstrate that the trial court's findings of fact were "manifestly unsupported by reason or [are] so arbitrary that [they] could not have been the result of a reasoned decision."
 
 Campbell
 
 , 359 N.C. at 673,
 
 617 S.E.2d at 19
 
 (citation and quotation marks omitted).
 

 It is also noteworthy that Judge Long, who ruled upon Defendant's motion for appropriate relief, also served as the presiding judge at Defendant's trial. He had the opportunity to review the cold record in this case in light of his experience as the presiding judge in this case. The majority, in essence, is telling the presiding judge that his review of the testimony is not as he recalls. Regardless, because the trial court's findings of fact are supported by competent evidence, they are binding on this Court.
 
 Lutz
 
 ,
 
 177 N.C. App. at 142
 
 ,
 
 628 S.E.2d at 35
 
 .
 

 The trial court concluded as a matter of law that Defendant was not prejudiced by Dr. Sheaffer's testimony. When taken in context, the two portions of Dr. Sheaffer's disputed testimony, as found by the trial court, do not amount to vouching for the victim. Rather, Dr. Sheaffer was disagreeing with trial counsel's assertion that there was nothing wrong with the victim and attempting to explain coding decisions in his office based on the DSM. Had this argument been presented during the initial appeal, it is not reasonably probable that Defendant would have been granted a new trial.
 

 [1]
 

 A pseudonym.
 

 [2]
 

 This appeal is before us for the second time; for a more detailed account of the facts in the underlying case, see
 
 State v. Casey
 
 ,
 
 195 N.C.App. 460
 
 ,
 
 2009 WL 367734
 
 , *1-3, 2009 N.C. App. LEXIS 144*, *2-7 (N.C. Ct. App. Feb. 17, 2009).
 

 [3]
 

 The "reasonable probability" standard required by the United States Supreme Court for IAC claims should not be confused with the "reasonable probability" standard applied by our courts when reviewing for "plain error" under Rule 10 of our Rules of Appellate Procedure. It could be argued that a defendant's burden to show "plain error" is higher: To show IAC, the United States Supreme Court instructs that a defendant need not show that the error "more likely than not" affected the outcome.
 
 Strickland
 
 ,
 
 466 U.S. at 694
 
 ,
 
 104 S.Ct. 2052
 
 . But to show "plain error," our Supreme Court requires that a defendant show that the error "tipped the scales" and was "fundamental" such that "justice cannot have been done."
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983).