**STATE v. HOFF**

[224 N.C. App. 155 (2012)]

Q Do you know a [defendant] Mary Grier?

. . .

A No.

Q You wouldn't have written a check to her?

A No.

━━━━━━━━

STATE OF NORTH CAROLINA
v.
ABDUL HASSAN JAMAAL HOFF

No. COA12-771

Filed 4 December 2012

**1. Burglary—sufficient evidence—defendant as perpetrator— fingerprints—in-court identification**

The trial court did not err in a first-degree burglary case by denying defendant's motion to dismiss the charge. A witness's in-court identification of defendant as the intruder constituted some evidence other than defendant's fingerprints identifying him as

the perpetrator. Thus, the State presented substantial evidence identifying defendant as the perpetrator of the charged crime.

**2. Constitutional Law—effective assistance of counsel—burglary—fingerprint evidence**

Defendant did not receive ineffective assistance of counsel in a first-degree burglary case when his trial counsel did not move to exclude fingerprint evidence against him or cross-examine the State's fingerprint expert on the reliability of his methodology. There was no reasonable probability that the outcome of the trial would have been different had counsel objected to the admission of the fingerprint evidence or cross-examined the expert on the reliability of his methodology.

Appeal by defendant from judgment entered 2 February 2012 by Judge Paul C. Ridgeway in Superior Court, Person County. Heard in the Court of Appeals 14 November 2012.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Hilda Burnett-Baker, for the State.*

*Irons & Irons, P.A. by Ben G. Irons, II, for defendant-appellant.*

STROUD, Judge.

## I. Factual Background

Abdul Hassan Jamaal Hoff ("defendant") was indicted on 11 September 2010 for burglary in the first degree. The case went to jury trial and the jury returned a verdict of guilty. Defendant gave notice of appeal in open court. The facts presented at trial were as follows:

In the early morning of 8 October 2010, Mr. Robert Clayton was asleep in his home when he heard movement in the house where he lived alone. He saw a light shining on his ceiling and suspected that someone had broken into his house. Mr. Clayton grabbed his gun, fired one shot "down the hall," and turned on the light in his bathroom, where he saw a black male in a hooded coat standing by his commode. Mr. Clayton then pointed his gun at the intruder and said "I ought to shoot you right in the belly." The intruder said that he was in the wrong house and that "you shot my brother." The intruder ran and left the house when Mr. Clayton grabbed his phone to call the police.

When the police arrived on the scene they found a broken sliding basement window, which they discovered was the entry point for the

intruder. An investigator from the Raleigh/Wake County City-County Bureau of Identification (CCBI) found a set of fingerprints in "excellent" condition on the outside of an adjoining window and ran them through the FBI fingerprint database, which returned several possible matches, including defendant. The investigator then compared the fingerprints collected at Mr. Clayton's house with defendant's and found that they were a match.

Defendant moved to dismiss the burglary charge on the ground that the State failed to establish that defendant was the man who broke into Mr. Clayton's house. The trial court denied defendant's motion. Defendant presented no evidence, but renewed his motion to dismiss at the close of all evidence, which was denied again. Defendant now appeals from the jury's verdict of guilty as to burglary in the first degree.

## II. Motion to Dismiss

**[1]** Defendant first argues on appeal that the trial court erred in denying his motion to dismiss the charge against him because the State failed to present substantial evidence identifying him as the perpetrator of the charged crime. For the following reasons, we disagree.[1]

### A. Standard of Review

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence.

*State v. Lopez*, ___ N.C. App. ___, ___, 723 S.E.2d 164, 171-72, *disc. rev. denied*, ___ N.C. ___, ___ S.E.2d ___ (2012).

### B. Substantial evidence of defendant as perpetrator

---

1. Defendant does not contest the lack of evidence as to the required intent or any other essential element for burglary in the first degree. Therefore, we consider that argument abandoned. N.C.R. App. P. 28(b).

Defendant contends that the fingerprint evidence alone is insufficient to identify him as the perpetrator and that the trial court erred in denying his motion to dismiss. "Fingerprint evidence, standing alone, is sufficient to withstand a motion for nonsuit only if there is *substantial* evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed." *State v. Irick*, 291 N.C. 480, 491-92, 231 S.E.2d 833, 841 (1977) (citations and quotation marks omitted) (emphasis in original).

Here, there was evidence other than fingerprints that defendant was the perpetrator. Specifically, the State claims that Mr. Clayton identified defendant at trial as the intruder on the night in question. Defendant counters that Mr. Clayton could not actually identify him as the intruder. The question, then, is whether Mr. Clayton's in-court identification constitutes other evidence identifying defendant as the perpetrator.

An in-court

> identification of the perpetrator of a crime is not inadmissible because the witness is not absolutely certain of the identification, so long as the witness had a reasonable possibility of observation sufficient to permit subsequent identification. Such uncertainty goes to the credibility and weight of the testimony, and it is well established that the credibility, probative force, and weight of the testimony are matters for the jury.

*State v. Moses*, 350 N.C. 741, 767, 517 S.E.2d 853, 869 (1999) (citations, quotation marks, and brackets omitted).

The prosecutor and Mr. Clayton had the following convoluted exchange:

> [Prosecutor]: All right. Now, later, were you shown a picture of how Mr. Hoff looked as of October of 2010?
>
> [Mr. Clayton]: Yes. I seen a picture.
>
> [Prosecutor]: And before we came in here today I asked you when you looked at it, um, whether or not it was consistent with the person you saw in your house that morning.
>
> [Mr. Clayton]: No. Those pictures don't look like, you know, him then. He didn't have no glasses or nothing.

**STATE v. HOFF**

[224 N.C. App. 155 (2012)]

[Prosecutor]: So, in terms of the appearance, the defendant is now wearing glasses and the hair doesn't look the same as back then?

[Mr. Clayton]: No.

. . . .

[Prosecutor]: Is the defendant's appearance from his picture back in October of 2010 consistent with the person you saw in your house?

[Mr. Clayton]: Well, he's a little bit heavier now than he was then.

. . . .

[Prosecutor]: Mr. Clayton, I'm handing you what has been marked as state's exhibit number 1. Do you see the person, Mr. Hoff, in this photograph?

[Mr. Clayton]: Well, he looks more like it than he do now.

Then, the prosecutor asked Mr. Clayton to compare the picture of defendant to the intruder, but Mr. Clayton did not directly answer his question.

[Prosecutor]: So, in terms of the picture of Mr. Hoff in state's exhibit number 1, does that resemble the person that was in your house?

[Mr. Clayton]: Well, he had his hood on and all. When I throwed (sic) that gun on him, he probably turned a little bit whiter than what he is there.

[Prosecutor]: And you say how he looked in October of 2010 is different than how is today sitting in the courtroom. Is that right?

[Mr. Clayton]: Yes.

[Prosecutor]: And you can identify that you've seen and looked at this picture before, state's exhibit number 1, is Mr. Hoff?

[Mr. Clayton]: Yes.

Although this testimony is far from clear, taken in the light most favorable to the State, it could be understood that Mr. Clayton identi-

fied defendant as the man in his house on the night in question.[2] The prosecutor asked, "Is the defendant's appearance from his picture back in October of 2010 consistent with the person you saw in your house?" Mr. Clayton responded, "Well, he's a little bit heavier now than he was then." Implied in this answer is that defendant was the man in Mr. Clayton's home, though some details of his appearance at trial differed both from the booking photograph taken of defendant in October 2010 and from that of the man Mr. Clayton saw in his house.

Defendant points to Mr. Clayton's testimony on cross examination as indicating that Mr. Clayton could not, in fact, identify defendant as the burglar. Defense counsel attempted to clarify Mr. Clayton's earlier testimony and challenged his ability to positively identify defendant as the perpetrator:

> [Defense Counsel]: And did you hear the statement of [the prosecutor] about the fact that, if that's the case, that you are not absolutely sure that that individual is my client. Is that fair to say, Mr. Clayton?
>
> [Mr. Clayton]: Well, I'm not sure. Nah. It's a big difference. A year from now a person will change.
>
> [Defense Counsel]: But the person that was in your home that you allegedly had a conversation with, you can't positively identify that person as my client, can you?
>
> [Mr. Clayton]: No.

On the whole, Mr. Clayton's testimony was convoluted and self-contradictory. "As a general rule, the credibility of witnesses and the proper weight to be given their identification testimony is a matter for jury determination." *State v. Turner*, 305 N.C. 356, 362, 289 S.E.2d 368, 372 (1982) (citations omitted). Juries are given this vital role because, like other fact finders, they are able "to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." *Balawejder v. Balawejder*, ___ N.C. App. ___, ___, 721 S.E.2d 679, 689 (2011) (citation and quotation marks omitted). "This rule does not apply, however, where the only evidence identifying

---

2. Defendant does not raise any argument that the pretrial identification procedures used, if any, were impermissibly suggestive. *See State v. Green*, 296 N.C. 183, 187-89, 250 S.E.2d 197, 200-201 (1978) (discussing the different rules applicable to pretrial and in-court identifications).

defendant is inherently incredible because of undisputed facts, clearly established by the state's evidence, as to the physical conditions under which the alleged observation occurred." *State v. Miller*, 270 N.C. 726, 731, 154 S.E.2d 902, 905 (1967).

In *Miller*, the witness was more than 286 feet from the perpetrator during a nighttime encounter. *Id.* at 732, 154 S.E.2d at 905. Although the area was well-lit, the Supreme Court noted that "it is apparent that the distance was too great for an observer to note and store in memory features which would enable him, six hours later, to identify a complete stranger with the degree of certainty which would justify the submission of the guilty of such person to the jury." *Id.*

Here, the undisputed facts regarding the physical conditions of the encounter between Mr. Clayton and the intruder do not render his identification inherently incredible. Although it is unclear how far away Mr. Clayton was, the entire interaction between him and the intruder took place in the space between his bedroom and bathroom—certainly not the 286 feet found in *Miller*. There is no evidence that the burglar's face was entirely covered with a mask, although he was wearing a hooded jacket. Further, after shooting once, Mr. Clayton turned on his light and had a brief conversation with the intruder, giving Mr. Clayton a clear opportunity to see the intruder. Thus, although his testimony was not clear and unequivocal, we hold that Mr. Clayton's testimony identifying defendant as the man he saw in his house in October 2010 is not inherently incredible.

Therefore, Mr. Clayton's in-court identification of defendant as the intruder constitutes some evidence other than defendant's fingerprints identifying him as the perpetrator and the *Irick* rule is inapplicable. *See Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841 ("Fingerprint evidence, *standing alone*, is sufficient to withstand a motion to dismiss . . ." (emphasis added)). Taken in the light most favorable to the State, the eyewitness identification, Mr. Clayton's testimony that defendant had never been permitted access to the home, and the fingerprint evidence together constitute substantial evidence identifying defendant as the perpetrator. Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss.

### III. Ineffective Assistance of Counsel

[2] Defendant next argues that he received prejudicial ineffective assistance of counsel when his trial counsel did not move to exclude the fingerprint evidence against him or cross examine the State's fingerprint expert on the reliability of his methodology. We disagree.

A. Standard of Review

> "To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L.Ed. 2d 116 (2006).

B. Analysis

Defendant argues that there was a sound basis to object to the admissibility of the fingerprint evidence because the reliability of the "ACE-V" methodology used has been questioned in a report by the National Academy of Science ("NAS") and that failure to object or cross-examine the State's expert using that report constitutes prejudicial ineffective assistance of counsel.

Our Supreme Court has long recognized the validity of fingerprint analysis. *See Irick*, 291 N.C. at 488-89, 231 S.E.2d at 839. "The only limitation [the Supreme Court] has imposed on the admissibility of fingerprint comparisons to prove the identity of the perpetrator of a crime is a requirement that the testimony be given by an expert in fingerprint identification." *Id.* at 488. This well-established precedent is controlling on defendant's admissibility argument.

Here, the State's fingerprint expert was an experienced fingerprint analyst who had undergone substantial training in the field and had collected over a thousand latent prints. The expert testified about his methodology in detail and explained how he compared defendant's fingerprints with those found on Mr. Clayton's window. Further, although defendant's trial counsel did not cross-examine the fingerprint expert regarding the reliability of his methodology, he did cross-examine the State's expert on the completeness of his investigation.

STATE v. HOFF

[224 N.C. App. 155 (2012)]

We find both of defendant's arguments unconvincing. Given our Supreme Court's long-standing acceptance of the reliability of fingerprint evidence, defendant would not have been entitled to exclude the expert testimony and defendant cannot show prejudice from the failure of trial counsel to object. *See Irick*, 291 N.C. at 488, 231 S.E.2d at 839. Further, "[t]he decisions on what witnesses to call, whether and *how to conduct cross-examination,* and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client." *State v. Montford*, 137 N.C. App. 495, 503, 529 S.E.2d 247, 253 (2000) (citation, quotation marks, and ellipses omitted) (emphasis in original). We cannot say that failure to cross-examine an expert using one particular report constitutes ineffective assistance of counsel.

There is no reasonable probability that the outcome of the trial would have been different had counsel objected to the admission of the fingerprint evidence or cross-examined the expert using the NAS report. Defendant therefore cannot show that he received prejudicial ineffective assistance of counsel. *See Allen*, 360 N.C. at 316, 626 S.E.2d at 286.

## IV.  Conclusion

We hold that the trial court did not err in denying defendant's motion to dismiss the charge of first degree burglary for insufficient evidence identifying defendant as the perpetrator. We also hold that defendant did not receive prejudicial ineffective assistance of counsel.

NO ERROR.

Judges ELMORE and BEASLEY concur.