IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-680

Filed 12 September 2023

Wake County, No. 12 CRS 200918

STATE OF NORTH CAROLINA

v.

PARIS JUJUAN TODD, Defendant.

Appeal by writ of certiorari by Defendant from order entered 6 August 2021 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Court of Appeals 7 February 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden William Hayes, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

STROUD, Chief Judge.

Defendant Paris Jujuan Todd appeals, by a previously granted writ of certiorari, from an order denying his motion for appropriate relief ("MAR") on the ground Defendant failed to show his appellate counsel provided ineffective assistance of counsel. Because Defendant cannot show his appellate counsel deficiently performed and therefore cannot demonstrate ineffective assistance of counsel, we affirm the trial court's denial of Defendant's MAR.

## I. Background

On appeal from the denial of his MAR, Defendant argues his appellate counsel was ineffective for failing to raise a sufficiency of the evidence issue in his direct appeal. To determine whether appellate counsel was ineffective for failing to raise an argument the evidence at trial was insufficient, we need to consider the strength of the sufficiency argument. *See State v. Casey*, 263 N.C. App. 510, 521, 823 S.E.2d 906, 914 (2019) (stating "failing to raise a claim on appeal that was plainly stronger than those presented to the appellate court *is* deficient performance" (emphasis in original) (citing *Davila v. Davis*, 582 U.S. 521, 533, 198 L.Ed.2d 603, 615 (2017)); *see also State v. Todd*, 369 N.C. 707, 711, 799 S.E.2d 834, 837 (2017) ("*Todd III*") (indicating deficient performance and prejudice are the two requirements "for a successful ineffective assistance of counsel claim"); *State v. Blackmon*, 208 N.C. App. 397, 403, 702 S.E.2d 833, 837 (2010) (holding the defendant could not show prejudice as part of an ineffective assistance of counsel claim because the State presented sufficient evidence he was the perpetrator). Therefore, we start by recounting what the State's evidence tended to show at trial.

This Court's decision in Defendant's direct appeal, *State v. Todd*, No. COA13-67, 229 N.C. App. 197 (2013) ("*Todd I*") (unpublished), provides many of the relevant facts here, and we supplement that discussion with more facts from the trial transcript relevant to Defendant's appeal from the denial of his MAR. The *Todd I* Court recounted the basics facts of the case as follows:

> Shortly before midnight on 23 December 2011, the Raleigh

Police Department responded to a report of an armed robbery at 325 Buck Jones Road. Upon arrival, George Major (the "victim") informed police that, as he was walking home from work, an unknown African-American male approached him from behind, placed his hand on his shoulder, told him to get on the ground if he did not want to be hurt, and then forced him to the ground on his stomach. Once victim was on the ground, a second unknown African-American male approached and held victim's hands while the original assailant went through victim's pockets and felt around victim's clear plastic backpack. As the assailants prepared to flee, they ordered victim to remain facedown on the ground until he counted to 200 because they "didn't want to shoot him." Victim complied until he could no longer hear the assailants' footsteps. The assailants took victim's wallet containing an identification card, credit cards, and a small velvet drawstring bag containing change.

During the police investigation, Stacey Sneider of the City–County Identification Bureau was dispatched to assist in processing the backpack for fingerprints. During her analysis, Sneider collected two fingerprints from the backpack, one of which was later determined to be . . . [D]efendant's right middle finger. As a result, a warrant was issued for [D]efendant's arrest.

*Todd I*, slip op. at 2-3 (brackets altered).

"On 18 January 2012, Officer Potter of the Raleigh Police Department stopped [D]efendant for illegal tint on his car's windows near the scene of the robbery. During the stop, Officer Potter came across [D]efendant's outstanding warrant and arrested [D]efendant." *Id.*, slip op. at 3. Specifically, Defendant was arrested as he went into a dead end about 300 yards from the scene of the robbery. The arrest location was also in the same direction that one assailant ran after the robbery.

- 3 -

Following his arrest, Officer Potter brought Defendant for an interview with the officer investigating the robbery, Detective Codrington. During this interview, Defendant denied he lived at an address on the same street on which he was arrested, which was only 300 yards from the robbery, and Defendant instead said he lived in a different town.

Defendant was indicted for robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon on 8 April 2012. *Todd I*, slip op. at 3. Following a continuance, Defendant's trial was set to begin on 12 June 2012. *Id.* The day before trial, "the State received a copy of the fingerprints" and "provided them to defense counsel that same day." *Id.* The State had already provided defense counsel with its forensic report showing "[D]efendant's fingerprints were located at the scene of the crime" in January 2012. *Id.* After receiving a copy of the fingerprints the day before trial, "defense counsel stated that she was prepared to go to trial," but "she requested a continuance in order for her to obtain an expert to analyze the fingerprints." *Id.* "No affidavit was attached to counsel's unsigned motion, which neither indicated the expert she planned to call nor what testimony the expert would offer." *Id.*, slip op. at 3-4. The trial court denied Defendant's motion for a continuance. *Id.*, slip op. at 4.

At trial, the State's witnesses included: the victim of the robbery; an officer who spoke with the victim the night of the robbery; Agent Sneider who collected the fingerprints off the backpack; a "fingerprint expert[,]" *id.*, slip op. at 4; Officer Potter

- 4 -

who arrested Defendant, *id.*, slip op. at 3; and Detective Codrington who investigated the robbery and interviewed Defendant. As relevant to the denied continuance motion, "Defendant's counsel was prepared to rebut the State's expert's testimony, and she cross-examined [the fingerprint expert] on various weaknesses in the fingerprint identification." *Id.*, slip op. at 4. At the close of the State's evidence, Defendant moved to dismiss on the grounds the State had "not proven their case." The trial court denied the motion to dismiss. After Defendant said he would not present any evidence and renewed his motion to dismiss at the close of all the evidence, the trial court again denied the motion to dismiss.

"On 14 June 2012, the jury found [D]efendant guilty of robbery with a dangerous weapon. The trial court entered judgment on the verdict, sentencing defendant to a term of 84 to 113 months' [sic] imprisonment. Defendant gave oral notice of appeal in open court." *Todd I*, slip op. at 4.

On appeal, Defendant's appellate counsel argued two issues: "(1) the trial court erred when it denied [D]efendant's motion for a continuance made on the first day of trial, and alternatively, (2) [Defendant] received ineffective assistance of trial counsel" because trial counsel "should have called an expert to produce testimony[.]" *See id.*, slip op. at 12-13 (describing Defendant's ineffective assistance of counsel argument as a "vague assertion"). Defendant's appellate counsel raised no argument about the sufficiency of the evidence identifying him as the perpetrator of the robbery. As to the continuance and ineffective assistance of trial counsel arguments Defendant

actually raised in his direct appeal, this Court held the trial court did not err and Defendant did not receive ineffective assistance of trial counsel. *Id.*, slip op. at 13.

On or about 23 September 2014, Defendant filed a MAR alleging ineffective assistance of appellate counsel. Specifically, Defendant argued his appellate counsel was ineffective "in failing to argue that the case should have been dismissed for lack of evidence" based on *State v. Irick*, 291 N.C. 480, 231 S.E.2d 833 (1977) and its progeny. (Capitalization altered.) Based on *Irick*, Defendant argued "for fingerprint evidence *standing alone* to withstand a motion to dismiss, there must be 'substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed.'" (Emphasis in original) (Quoting *Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841). Defendant contended (1) the fingerprint evidence in his case stood alone and (2) the State did not present substantial evidence the fingerprint could only have been impressed when the crime was committed. The MAR court "summarily denied" Defendant's MAR.

After granting Defendant's petition for a writ of certiorari, this Court heard an appeal of the denial of Defendant's MAR in *State v. Todd*, 249 N.C. App. 170, 790 S.E.2d 349 (2016) ("*Todd II*"), *rev'd Todd III*, 369 N.C. 707, 799 S.E.2d 834. The *Todd II* Court reversed the denial of the MAR because "the State presented insufficient evidence that [D]efendant committed the underlying offense, and if [D]efendant's appellate counsel had raised this issue in the initial appeal, [D]efendant's conviction would have been reversed." *Todd II*, 249 N.C. App. at 191, 790 S.E.2d at 364. As a

result, the *Todd II* Court remanded for an order granting Defendant's MAR and vacating his conviction. *Id.* Judge Tyson dissented on the ground the State had presented sufficient evidence and thus Defendant failed to show his appellate counsel's performance was deficient. *Id.* at 193, 790 S.E.2d at 365 (Tyson, J. Dissenting).

Our Supreme Court then issued an opinion, based on the State's appeal from *Todd II*, in *Todd III*. *See Todd III*, 369 N.C. at 709, 799 S.E.2d at 836 (indicating State took appeal). The *Todd III* Court reversed because it found the record was "not thoroughly developed regarding [D]efendant's appellate counsel's reasonableness, or lack thereof, in choosing not to argue sufficiency of the evidence" when reasonableness is "the proper measure of attorney performance" for ineffective assistance of counsel. *Id.* at 710, 712, 799 S.E.2d at 837-38 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 80 L.Ed.2d 674, 694 (1984) on the "proper measure of attorney performance") (brackets altered). Therefore, the record was "insufficient to determine whether [D]efendant received ineffective assistance of counsel." *Id.* at 712, 799 S.E.2d at 838. The *Todd III* Court directed this Court to remand to the MAR court "with instructions to fully address whether appellate counsel made a strategic decision not to raise a sufficiency of the evidence argument, and, if such a decision was strategic, to determine whether that decision was a reasonable decision." *Id.*

The matter was remanded to the MAR court on 19 July 2017. By that time, Defendant had been released from custody under an appeal bond he posted on 3

January 2017.  Following the remand to the MAR Court in July 2017, "[i]nexplicably" the MAR Court did not hold further proceedings until a new judge took over the MAR proceedings and discovered that oversight on 11 February 2021.

The MAR Court then held an evidentiary hearing on 26 July 2021.  The only witness at the evidentiary hearing was Defendant's appellate counsel.  As summarized in the trial court's unchallenged findings of fact, appellate counsel testified he decided and "was confident in the decision to not raise the *Irick* sufficiency of the evidence argument[.]"  (Quotation marks omitted.)

Following the evidentiary hearing, the MAR court entered a written order denying Defendant's MAR on 6 August 2021.  After recounting the procedural history of the case, the trial court made findings of fact about the underlying trial, appellate counsel's background, and how appellate counsel decided what issues to present in Defendant's appeal.  Based on that review, the MAR court found appellate counsel "made a strategic, intentional decision to put forward what he believed were the two best arguments in the [D]efendant's case[,]" which did not include "the *Irick* sufficiency of the evidence argument[.]"

After reviewing the applicable law and analyzing the relevant history of the case, the MAR court could not conclude Defendant's "appellate counsel was unreasonable in choosing to advance two issues on appeal . . . while foregoing the sufficiency of the evidence issue that he thought would detract from his stronger arguments."  Therefore, the MAR court concluded Defendant had failed to show he

had received ineffective assistance of appellate counsel, and denied his MAR. On 8 April 2022, this Court granted Defendant's petition for writ of certiorari to review the denial of the MAR.

## II.    Analysis

In his sole argument on appeal, Defendant contends "the MAR court erred by denying [his] MAR alleging ineffective assistance of appellate counsel." (Capitalization altered.) As a matter of due process, a criminal defendant has the right to effective assistance of counsel in their first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396, 83 L.Ed.2d 821, 830 (1985) ("A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."). In determining whether a defendant received ineffective assistance of appellate counsel, we use the two-pronged test first articulated by the United States Supreme Court in *Strickland*. *See Todd III*, 369 N.C. at 710-11, 799 S.E.2d at 837 (2017) (stating *Strickland* standard in case about claim of ineffective assistance of appellate counsel). Thus, Defendant must show "both deficient performance and prejudice" to prevail on his "ineffective assistance of counsel claim." *Id.* at 711, 799 S.E.2d at 837.

## A. Standard of Review

When the MAR court has conducted an evidentiary hearing, the reviewing appellate court determines "whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court."

*State v. Allen*, 378 N.C. 286, 297, 861 S.E.2d 273, 282 (2021) (citations and quotation marks omitted). "The MAR court's factual findings are binding upon the defendant if they are supported by evidence, even if the evidence is conflicting, but the MAR court's conclusions of law are always reviewed de novo[.]" *Id.* (citation and quotation marks omitted) (brackets altered).

Defendant's only argument referencing the MAR court's findings regards the alleged implication that an attendee at an appellate workshop told appellate counsel to abandon the sufficiency issue. Defendant can make this implied argument when arguing his attorney's "performance was deficient[,]" (capitalization altered) which is a prong of ineffective assistance of counsel, *see Todd III*, 369 N.C. at 711, 799 S.E.2d at 837, so we proceed straight to discussing the trial court's conclusion of law Defendant failed to show his "right to effective counsel ha[d] been violated." We discuss Defendant's challenge to this finding of fact as part of the deficiency analysis.

## B. Deficient Performance Prong

We first address the deficient performance prong of the ineffective assistance of counsel standard. *See id.* (indicating the two prongs for an ineffective assistance of counsel claim are deficient performance and prejudice). To establish the deficiency prong "of an ineffective assistance of counsel claim, the defendant must show 'that his counsel's conduct fell below an objective standard of reasonableness.'" *State v. Baskins*, 260 N.C. App. 589, 600, 818 S.E.2d 381, 391 (2018) (quoting *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (in turn citing *Strickland*,

466 U.S. at 687, 80 L.Ed.2d at 693)).  This is a high bar; the deficiency prong "requires a showing that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant[.]'"  *Todd III*, 369 N.C. at 710, 799 S.E.2d at 837 (quoting *Strickland*, 466 U.S. at 687, 80 L.Ed.2d at 693).

In the appellate context, "[g]enerally, 'the decision not to press a claim on appeal is not an error of such magnitude that it renders counsel's performance constitutionally deficient under the test of *Strickland*[.]'"  *Baskins*, 260 N.C. App. at 600, 818 S.E.2d at 391 (quoting *Smith v. Murray*, 477 U.S. 527, 535, 91 L.Ed.2d 434, 445 (1986)) (brackets altered).  This standard reflects the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith*, 477 U.S. at 536, 91 L.Ed.2d at 445 (citation and quotation marks omitted).

"However, failing to raise a claim on appeal that was plainly stronger than those presented to the appellate court *is* deficient performance."  *Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914 (emphasis in original) (citing *Davila*, 582 U.S. at 533, 198 L.Ed.2d at 615).  To "eliminate the distorting effects of hindsight," courts look at the strength of the issues based on the law at the time appellate counsel submitted their opening brief.  *See Smith*, 477 U.S. at 536, 91 L.Ed.2d at 445-46 (citation and quotation marks omitted) (discussing the need to prevent the distortion of hindsight and then analyzing the decision of appellate counsel based on the "law at the time [he] submitted his opening brief").

Defendant argues his appellate counsel "made an unreasonable strategic decision to omit from [Defendant's] brief what likely would have been a winning issue and instead chose to raise two issues that were sure to lose." (Capitalization altered.) Specifically, Defendant contends the winning issue his appellate counsel should have raised was a claim the evidence was insufficient based on *Irick*.

To evaluate whether Defendant's *Irick* fingerprint evidence argument was "plainly stronger" than the arguments his appellate counsel raised, we must first evaluate the strength of the *Irick* claim. *See Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914 (explaining it is "deficient performance" when appellate counsel fails to raise a claim "that was plainly stronger than those presented to the appellate court"). If the *Irick* claim itself lacks sufficient strength, then Defendant has failed to carry his burden to show deficient performance and we need not evaluate the relative strength of the two claims actually raised on appeal. *See Smith*, 477 U.S. at 535-36, 91 L.Ed.2d at 445-46 (determining a decision not to pursue an objection to certain testimony on appeal was not "an error of such magnitude that it rendered counsel's performance constitutionally deficient under" *Strickland* and not mentioning any arguments actually raised in appeal as part of that analysis); *see also Todd III*, 369 N.C. at 710, 799 S.E.2d at 837 ("*Strickland* requires that *a defendant* first establish that counsel's performance was deficient." (emphasis added)).

In *Irick*, a burglary case, the defendant argued the trial court should have granted his motion to dismiss for insufficient evidence where "[a] key piece of

- 12 -

circumstantial evidence . . . was [a] fingerprint" of the defendant's found within the burgled home. *Irick*, 291 N.C. at 488, 490-91, 231 S.E.2d at 839-41. First, our Supreme Court stated the general test for sufficiency of the evidence, *i.e.* "whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances." *Id.* at 491, 231 S.E.2d at 841 (citation and quotation marks omitted). Our Supreme Court then explained, "Fingerprint evidence, standing alone, is sufficient to withstand a motion for nonsuit only if there is substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed." *Id.* at 491-92, 231 S.E.2d at 841 (citations, quotation marks, and emphasis omitted). While *Irick* did not include any circumstances showing the fingerprint "could only have been impressed at the time the crime was committed[,]" our Supreme Court found "other circumstances tend[ed] to show that [the] defendant was the criminal actor." *Id.* at 492, 231 S.E.2d at 841. As a result, the *Irick* Court returned to the general test for sufficiency and held, "[a]ll of these circumstances, taken with the fingerprint identification, when considered in the light most favorable to the State, permit a reasonable inference that [the] defendant was the burglar[.]" *Id.* at 492, 231 S.E.2d at 842; *see also id.* at 491, 231 S.E.2d at 841 (stating the general sufficiency of the evidence test is "whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances").

Since *Irick*, our Courts have further expanded upon the law around sufficiency

of the evidence and fingerprints. First, this Court has clarified when there is "some evidence other than [the] defendant's fingerprints identifying him as the perpetrator . . . the *Irick* rule is inapplicable." *State v. Hoff*, 224 N.C. App. 155, 161, 736 S.E.2d 204, 208 (2012) (citing *Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841). When the fingerprint evidence does not stand alone, we apply the normal sufficiency standard of whether, "[t]aken in the light most favorable to the State" the other evidence "together" with the fingerprint evidence "constitute[s] substantial evidence identifying [the] defendant as the perpetrator." *See Hoff*, 224 N.C. App. at 157, 161, 736 S.E.2d at 206, 208 (stating this in an analysis of the evidence after laying out the sufficiency standard as requiring "substantial evidence of . . . [t]he defendant's being the perpetrator of the charged offense" when the court "consider[s] the evidence in the light most favorable to the State" and gives the State "every reasonable inference to be drawn from that evidence" (citation and quotation marks omitted)). For example, in *Hoff*, the victim's "in-court identification of [the] defendant as the intruder" was "some evidence other than [t]he defendant's fingerprints identifying him as the perpetrator[,]" so "the *Irick* rule [was] inapplicable." *Id.* at 161, 736 S.E.2d at 208. Then, combining the identification evidence with the fingerprint evidence, the *Hoff* Court found "substantial evidence identifying [the] defendant as the perpetrator[,]" so "the trial court did not err in denying [the] defendant's motion to dismiss." *Id.*

Second, our Courts have expanded upon the type of additional evidence that

can mean "the *Irick* rule is inapplicable[.]" *Hoff*, 224 N.C. App. at 161, 736 S.E.2d at

208. In *State v. Cross*, our Supreme Court found sufficient to withstand a motion to

dismiss the fingerprint evidence combined with the following additional evidence:

- "the assailant abandoned the victim within blocks of where the defendant was frequently seen and where [the] defendant was eventually located and arrested[;]"
- "a pathway existed near that location which led to the back of the apartment [the] defendant was in when he was arrested[;]"
- "the defendant made efforts to change his appearance by shaving his head[;]"
- "the defendant made an effort to evade arrest[;]" and
- "the defendant repeatedly denied to police officers that his name" was his name.

*See State v. Cross*, 345 N.C. 713, 718-19, 483 S.E.2d 432, 435-36 (1997) (noting this

Court "overlooked" the listed "additional pieces of corroborating evidence" after

determining the "fingerprint evidence, standing alone, was sufficient"); *see also Cross*,

345 N.C. at 719-20, 483 S.E.2d at 436 (Frye, J. concurring) (arguing it was

"unnecessary to decide" whether the fingerprint evidence standing alone was

insufficient given "other evidence tending to show that [the] defendant was the

perpetrator of the crimes charged in this case was introduced at trial"). Similarly, in

*State v. Futrell*, this Court determined the fingerprint evidence did not stand alone

because "DNA evidence as well as placement of [the] defendant near the victim's

apartment at the time of the crime by numerous witnesses linked him with the

offenses charged." *State v. Futrell*, 112 N.C. App. 651, 668, 436 S.E.2d 884, 893 (1993)

(citing *State v. Mercer*, 317 N.C. 87, 95-99, 343 S.E.2d 885, 890-92 (1986)).

Here, to evaluate the strength of the *Irick* claim, we must first determine whether the fingerprint evidence was standing alone. *See Hoff*, 224 N.C. App. at 161, 736 S.E.2d at 208 (explaining "the *Irick* rule is inapplicable" when there is "some evidence other than [the] defendant's fingerprints identifying him as the perpetrator"). If the fingerprint evidence stands alone, the fingerprint evidence can withstand a motion to dismiss "only if there is substantial evidence of circumstances from which the jury can find that the fingerprints could only have been impressed at the time the crime was committed." *Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841. If the fingerprint evidence does not stand alone, however, we return to a normal sufficiency of the evidence standard and determine whether, taking the evidence in the light most favorable to the State, there is substantial evidence defendant is "the perpetrator of the charged offense." *See Hoff*, 224 N.C. App. at 157, 161, 736 S.E.2d at 206, 208 (stating traditional sufficiency of the evidence standard, concluding additional evidence meant "the *Irick* rule [was] inapplicable[,]" and then determining the fingerprint evidence, combined with additional evidence, was "substantial evidence identifying [the] defendant as the perpetrator"); *see also Irick*, 291 N.C. at 491-93, 231 S.E.2d at 841-42 (determining other circumstances showed the defendant was the perpetrator and then concluding the fingerprint and the other circumstances "permit[ted] a reasonable inference that [the] defendant was the burglar").

The fingerprint evidence does not stand alone in this case. First, the State presented evidence Defendant was arrested a month later about 300 yards from the

scene of the robbery and that place of arrest was in the direction one assailant ran after the robbery. This evidence resembles the additional evidence in *Cross* that the assailant abandoned the victim blocks away from where the defendant was arrested and that the place where the assailant abandoned the victim was connected to the place the defendant was arrested via a pathway. *See Cross*, 345 N.C. at 718-19, 483 S.E.2d at 435-36.

Second, the State presented evidence Defendant denied he lived at the address that was only 300 yards from where the robbery occurred and instead stated he lived in a different town, but "all information" the police could gather indicating he lived at the address near the robbery. This evidence resembles the situation in *Cross* where the defendant denied that his name was his name when asked about it by officers. *See id.* at 719, 483 S.E.2d at 436.

Finally, the robbery victim identified his assailants as African-American men, *see Todd I*, slip op. at 2, and Defendant is an African-American man. While our Courts have not specifically said the defendant matching the perpetrator's description is an additional factor in a fingerprint case, our Supreme Court has used it as a factor in a sufficiency case. *See Mercer*, 317 N.C. at 97-98, 343 S.E.2d at 891-92 (noting the victim described the defendant as "a tall, thin [B]lack man in his twenties[,]" which was "consistent with the defendant's appearance[,]" as part of a determination jewelry was not the only evidence that "link[ed] the defendant with the commission of the offenses"). Notably, this Court cited to *Mercer* in *Futrell*, a

fingerprint evidence case. *See Futrell*, 112 N.C. App. at 668, 436 S.E.2d at 893 (citing *Mercer* to support its conclusion other evidence "linked [the defendant] with the offenses charged"). This is not to suggest that describing the race of an assailant is sufficient, standing alone, to identify an assailant; it is only noted here to show that the race of the assailant was not inconsistent with the victim's description of Defendant. *See id.* Here, other factors besides the description of Defendant, i.e., fingerprint evidence and Defendant lying about his residence, were sufficient alone without the description.

Because of this additional evidence, the fingerprint evidence here was not standing alone. So *Irick*'s special rule—requiring an inquiry about whether there is substantial evidence the fingerprint "could only have been impressed at the time the crime was committed"—is inapplicable. *Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841; *Hoff*, 224 N.C. App. at 161, 736 S.E.2d at 208. Instead, we apply the typical sufficiency of the evidence standard. *See Hoff*, 224 N.C. App. at 157, 161, 736 S.E.2d at 206, 208; *see also Irick*, 291 N.C. at 491-92, 231 S.E.2d at 841-42.

Returning to the typical sufficiency of the evidence standard, taking the evidence in the light most favorable to the State, the State presented substantial evidence Defendant is "the perpetrator of the charged offense." *See Hoff*, 224 N.C. App. at 157, 736 S.E.2d at 206 (describing this as the "well known" standard for a motion to dismiss (citation and quotation marks omitted)). Combining all the evidence, the State presented four pieces of evidence supporting Defendant was the

perpetrator: (1) one of the two fingerprints on the victim's backpack was Defendant's and the victim had never let Defendant touch his bag; (2) Defendant was arrested a month later in close proximity to the robbery scene and at a location in the direction one of the assailants ran after the robbery; (3) Defendant denied to police he lived at the address in close proximity to the robbery and in the direction one of the assailants had run after the robbery despite "all information" the police could gather indicating he lived there; and (4) at least to the extent of the available evidence identifying the assailants, Defendant matched the description of the assailants. *See Todd I*, slip. op. at 2 (identifying assailants as African-American men). Taken together, and "in the light most favorable to the State," these four pieces of evidence are "substantial evidence identifying [D]efendant as the perpetrator[,]" and therefore the trial court had sufficient evidence to deny a Defendant's motion to dismiss. *Hoff*, 224 N.C. App. at 161, 736 S.E.2d at 208.

Our conclusion the trial court had sufficient evidence to deny Defendant's motion to dismiss at trial ultimately undermines Defendant's attempt to argue his appellate counsel was ineffective. Because the fingerprint evidence was not standing alone and the State presented sufficient evidence Defendant was the perpetrator of the robbery, Defendant would not have prevailed on the *Irick* issue. *See Hoff*, 224 N.C. App. at 161, 736 S.E.2d at 208 (determining the trial court did not err in denying the motion to dismiss because (1) the fingerprint evidence was not standing alone such that the *Irick* rule was "inapplicable" and (2) the fingerprint evidence and the

additional evidence "together constitute[d] substantial evidence identifying [the] defendant as the perpetrator"). Because Defendant would not have prevailed on the *Irick* issue, the *Irick* issue was not "plainly stronger" than the other issues his attorney presented on appeal.[1] *See Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914 (explaining it is "deficient performance" when appellate counsel fails to raise a claim "that was plainly stronger than those presented to the appellate court"). Because the unraised *Irick* argument was not "plainly stronger than those presented to the appellate court[,]" Defendant has not met his burden of showing deficient performance. *Id.*; *see also Todd III*, 369 N.C. at 710-11, 799 S.E.2d at 837 (indicating the defendant carries the burden of proving deficient performance). Because Defendant cannot show deficient performance of his appellate counsel, he cannot show his appellate counsel was ineffective. *See Todd III*, 369 N.C. at 711, 799 S.E.2d at 837 ("[B]oth deficient performance and prejudice are required for a successful ineffective assistance of counsel claim."). Finally, because Defendant cannot show ineffective assistance of appellate counsel, the trial court correctly denied his MAR.

Defendant's arguments on appeal do not convince us otherwise. Defendant first argues the fingerprint evidence here was standing alone—so the *Irick* argument was plainly stronger and his appellate counsel was ineffective—by drawing

---

[1] Notably, this conclusion remains the same even if we accept, *arguendo*, Defendant's contention "it was impossible to win the issues raised by appellate counsel." (Capitalization altered.) As a matter of logic, one losing argument cannot be plainly stronger than two arguments that also lose.

comparisons to *State v. Scott*, 296 N.C. 519, 251 S.E.2d 414 (1979) and *State v. Gilmore*, 142 N.C. App. 465, 542 S.E.2d 694 (2001).

In *Scott*, our Supreme Court started its analysis with a determination "[t]he only evidence tending to show that [the] defendant was even in the home of" the murder victim was "a thumbprint found on a metal box in the den on the day of the murder[.]" *Scott*, 296 N.C. at 522, 251 S.E.2d at 416-17; *see also Scott*, 296 N.C. at 524, 251 S.E.2d at 418 (indicating the crime was an attempted robbery that culminated in a death). Citing a long line of cases including *Irick*, the *Scott* Court explained, "The determinative question, therefore, is whether the State offered substantial evidence that the thumbprint could only have been placed on the box at the time of the homicide." *See id.* at 522-53, 251 S.E.2d at 417 (stating the determinative question and then listing eight cases where our Supreme Court "has considered the sufficiency of fingerprint evidence" with *Irick* as the most recent). Our Supreme Court then determined testimony from the victim's niece was the "only evidence in this case to prove when the fingerprint could have been impressed" and "to her knowledge the defendant had never visited the house" nor handled the box on which his fingerprint was found. *Id.* at 524, 251 S.E.2d at 417-18. Because the victim's niece testified she was not home "'during the five week days'" and could not have known if the defendant could have entered before the crime, the *Scott* Court found the evidence "insufficient to withstand a motion to dismiss." *Id.* at 526, 251 S.E.2d at 419.

Similarly, in *Gilmore*, the State presented evidence the defendant's fingerprint was found on glass from a broken window following a break-in at a store. *See Gilmore*, 142 N.C. App. at 470, 542 S.E.2d at 698. The defendant argued his fingerprint was "standing alone" and the *Gilmore* Court agreed because it proceeded to consider whether any additional circumstances showed his fingerprint "was impressed at the time of the break-in." *Id.* at 469-70, 542 S.E.2d at 697-98. This Court found "no additional circumstances tending to show [the d]efendant's fingerprint was impressed at the time of the break-in" because the fingerprint could have been impressed on the outside of the glass where a customer could "access" and the State had presented evidence the defendant was a customer in the store near the time of the break-in. *Id.* at 470, 470 n.2, 542 S.E.2d at 698, 698 n.2. After determining there were no additional circumstances, the *Gilmore* Court concluded, "As the State did not present any evidence, other than the fingerprint evidence, that Defendant was the perpetrator of the break-in . . . the charges against Defendant as to the break-in . . . should have been dismissed." *Id.* at 470, 542 S.E.2d at 698.

Defendant's Second Motion to Take Judicial Notice also asks we take judicial notice of attached "portions of the printed record on appeal and excerpts from the appellant and appellee briefs filed in" *Gilmore* because he argues they "are relevant to the issue of whether the fingerprint in this case stood alone." Defendant's motion for judicial notice is unnecessary. We always can look back at materials filed with this Court in a past case without the need to take judicial notice. If the parties want

to argue based on past materials filed in this Court, they can make that argument by referring us to the case name, number, and specific material this Court should review. Therefore, we deny Defendant's Second Motion to Take Judicial Notice.

Turning to the additional items from *Gilmore* we can review without the need to take judicial notice, Defendant does not explain which facts we should consider or how exactly they relate to the issue in this case. The only potential facts in the briefs not specifically included in the *Gilmore* analysis discussed above are the following from the State's brief in *Gilmore*: (1) the defendant had come into the shop the same day or the day before and "was particularly noticed because he had on a very large coat for such a warm day" and (2) after the defendant left the store, the store's assistant manager found two of his court documents in the store parking lot. *See id.* at 469-70, 542 S.E.2d at 697-98 (relying on aforementioned facts in the opinion). These facts do not change how we view the *Gilmore* Court's analysis because they simply further establish, as the *Gilmore* Court already recognized, the defendant was "lawfully present in the store prior to the break-in" and therefore could have put his fingerprint on the store glass before the time the crime was committed. *Id.* at 470, 542 S.E.2d at 698. Notably, this was part of the *Gilmore* Court's analysis about whether there was substantial evidence the defendant impressed the fingerprint at the time of the break-in, *see id.*, which is only at issue *after* a court determines the fingerprint evidence stands alone. *See Hoff*, 224 N.C. App. at 161, 736 S.E.2d at 208 (explaining because there was "some evidence other than [the] defendant's

fingerprints identifying him as the perpetrator . . . the *Irick* rule is inapplicable").

Thus, neither of Defendant's case comparisons are convincing because both cases determined the fingerprint evidence was standing alone and there was not sufficient evidence the fingerprint could only have been impressed when the crime was committed. *See Scott*, 296 N.C. at 522-26, 251 S.E.2d at 416-19; *Gilmore*, 142 N.C. App. at 469-71, 542 S.E.2d at 697-98. Here, by contrast, we have explained the State presented three pieces of additional evidence, so the fingerprint does not stand alone and therefore we do not address the question of whether the fingerprint could only have been impressed when the crime was committed. *See Hoff*, 224 N.C. App. at 158, 161, 736 S.E.2d at 206, 208 (explaining *Irick* rule and then stating it is inapplicable if the fingerprint evidence does not stand alone). Therefore, we are not convinced by Defendant's comparisons to *Scott* and *Gilmore*.

Defendant also contends "to the extent the MAR court's findings of fact imply that anyone at [an] appellate workshop told appellate counsel to abandon the sufficiency issue, the findings are unsupported." (Capitalization altered.) To the extent this finding is relevant to the issue of ineffective assistance of counsel, Defendant appears to argue the finding relates to the deficiency prong's emphasis on whether "counsel's conduct fell below an objective standard of reasonableness." *Baskins*, 260 N.C. App. at 600, 818 S.E.2d at 391. The logic of the argument Defendant is trying to refute would be if "experienced appellate attorneys" told appellate counsel to abandon the *Irick* argument, then appellate counsel made a

reasonable decision. While reasonableness is the general standard for deficient performance, *see Baskins*, 260 N.C. App. at 600, 818 S.E.2d at 391, United States Supreme Court caselaw also provides a more specific rule that "failing to raise a claim on appeal that was plainly stronger than those presented to the appellate court *is* deficient performance." *See Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914 (citing *Davila*, 582 U.S. at 533, 198 L.Ed.2d at 615 for this proposition). And based on that metric, we have already determined appellate counsel's performance was not deficient because the *Irick* issue was not plainly stronger than the two issues he raised on appeal. Therefore, even assuming *arguendo* this finding is unsupported, it does not impact our determination appellate counsel was deficient because we reached such a result without relying on the challenged finding.

Finally, Defendant asserts the MAR court erred in considering that the trial judge, who the MAR Court noted was an "experienced jurist[,]" "twice denied [Defendant]'s motions to dismiss." Notably, Defendant does not challenge the other portion of the MAR court's same conclusion of law that indicates Judge Tyson, who is "also an experienced jurist," concluded the State presented sufficient evidence of Defendant's identity as the perpetrator. However, the issue of whether multiple judges rejecting Defendant's argument adds anything to the reasonability analysis need not be considered further here because, as stated above, rather than relying on the general standard of reasonableness alone, we have used the more specific deficient performance standard for appellate counsel and determined the *Irick* claim

was not "plainly stronger" than the issues Defendant's appellate counsel presented. *Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914; *see also Baskins*, 260 N.C. App. at 600, 818 S.E.2d at 391 (indicating the deficiency prong generally asks whether "counsel's conduct fell below an objective standard of reasonableness").

After our *de novo* review of the trial court's conclusion Defendant failed to show his "right to effective counsel ha[d] been violated[,]" or the *Irick* issue was not plainly stronger than the issues appellate counsel raised in Defendant's direct appeal. Therefore, appellate counsel's performance was not deficient, *see Casey*, 263 N.C. App. at 521, 823 S.E.2d at 914 (indicating it is deficient performance if appellate counsel failed to raise an issue that was "plainly stronger" than the issues actually raised on appeal), so Defendant has not shown ineffective assistance of counsel. *See Todd III*, 369 N.C. at 711, 799 S.E.2d at 837 (requiring "both deficient performance and prejudice" to prevail on an ineffective assistance of counsel claim). Thus, we affirm the trial court's denial of Defendant's MAR.

## C. Prejudice

Since we have already determined Defendant failed to carry his burden on the deficient performance prong of the ineffective assistance of counsel test, we need not address prejudice. *See id.* (indicating a defendant must establish "both deficient performance and prejudice . . . for a successful ineffective assistance of counsel claim"). But we briefly note because we have concluded the State presented sufficient evidence Defendant was the perpetrator of the offense as part of our determination

the *Irick* issue was not plainly stronger, Defendant also cannot show prejudice. *See Blackmon*, 208 N.C. App. at 403, 702 S.E.2d at 837 (holding the defendant could not show prejudice as part of an ineffective assistance of counsel claim because the State presented sufficient evidence he was the perpetrator).

## III.    Conclusion

Defendant has failed to show the *Irick* issue his appellate counsel did not raise on appeal was plainly stronger than the two issues his appellate counsel raised on appeal. As a result, Defendant has not proven his appellant counsel's performance was deficient and cannot demonstrate he received ineffective assistance of counsel. Therefore, we affirm the trial court's denial of Defendant's MAR.

AFFIRMED.

Judges CARPENTER and RIGGS concur.